CITY OF MARION, Iowa, Appellant,

v.

James L. WEITENHAGEN, Michael De-LaMater and the Civil Service Commission of the City of Marion, Iowa, Appellees.

No. 83–575.

Court of Appeals of Iowa.

Nov. 20, 1984.

Tom Riley, Thomas M. Wertz, Cedar Rapids, and Marion City Atty. Donald C. Hoskins, Marion, for appellant City of Marion.

Gerald T. Sullivan and William H. Roemerman, Cedar Rapids, for appellees Weitenhagen and DeLaMater.

Considered by OXBERGER, C.J., and SNELL, and HAYDEN, JJ.

OXBERGER, Chief Judge.

The City of Marion has appealed from a decision of the district court which provided for reinstatement of two police officers. We affirm.

On August 5, 1981, following his alleged refusal to answer a question posed by his captain during a police department internal investigation, Marion police officer Weitenhagen was discharged for his alleged violation of police department duty manual sections 1105.02, 1105.04 (junior officers shall obey the lawful orders of senior officers), and 1109.05 (willfully departing from the truth). On January 7, 1982, officer DeLaMater was suspended for thirty days for his alleged violation of duty manual section 1109.01 (misconduct, neglect of duty or conduct unbecoming an officer or acts which discredit the department). Both officers appealed to the Marion Civil Service Commission pursuant to Iowa Code § 400.27 (1983).

The Commission found that officer Weitenhagen had committed misconduct by interfering with a security contract between a police reserve organization and the sponsor of a local fair and that the officer's failure to answer questions regarding this incident during an internal investigation justified disciplinary action. The Commission, however, reversed the previously ordered discharge and imposed a 90-day suspension instead. Pursuant to Iowa Code section 400.27, officer Weitenhagen appealed, and the city cross-appealed to the district court.

In a separate action the Civil Service Commission found that the City had not proved misconduct by officer DeLaMater

regarding his participation in the fair security incident. Accordingly, the Commission set aside DeLaMater's 30-day suspension and ordered him reinstated. The City appealed this decision to the district court.

The cases were consolidated in the district court. Following an extensive trial which resulted in some 1600 pages of transcript, the court entered a judgment in favor of both officers. Specifically, the court vacated officer Weitenhagen's suspension and ordered him reinstated, and affirmed the Commission's ruling reinstating officer DeLaMater.

Testimony and evidence at trial indicated that although the initial discharge of Weitenhagen and suspension of DeLaMater occurred at separate times, these disciplinary actions arose out of related circumstances. During the time in question, Weitenhagen and DeLaMater were officers in the Marion Police Protective Association (MPPA), which was the Marion police officer's collective bargaining unit under Iowa Code, Chapter 20. A dispute arose between the police department command staff and the MPPA regarding regulation and supervision of "extra work," which was voluntary security work performed by uniformed off-duty officers who were paid directly by the particular private employer. The Iowa Public Employment Relations Board ruled extra work was not a mandatory topic for bargaining. Following unsuccessful attempts to resolve the "extra work" dispute in collective bargaining negotiations, and the police department's alleged recruitment of police reserve organizations for certain "extra work" assignments, the MPPA members refused to volunteer for any "extra work" assignments.

In July 1981, the Marion Chamber of Commerce sponsored "Fair on the Square" for which they sought extra police security. Officer DeLaMater contacted almost all the Marion reserve police officers and requested that they not accept security assignments for the fair in support of the MPPA's position on the "extra work" dispute. This provided part of the basis for

the subsequent disciplinary action against DeLaMater. The City alleged that he had committed misconduct by coercing the reserves and frustrating the police department's attempts to provide security for a public event. DeLaMater denied any coercion and claimed that as a union officer he merely requested the reserve's support and cooperation with the MPPA. All those who testified who were contacted by him said they perceived no coercion or pressure.

The police department then contacted John Kinney of the Cedar Rapids Veterans of Public Safety (VPS) in an attempt to provide security for the fair. Thereafter, Kinney apparently agreed with Chamber of Commerce representative Thomas Newbanks that VPS would work the fair.

On the morning of the fair, Newbanks was involved in a dispute with Weitenhagen and DeLaMater at the fair site regarding Newbanks' refusal to allow the MPPA to have a booth at the fair. During the course of the discussion of this matter, Newbanks told Weitenhagen and DeLaMater that VPS had agreed to provide security at the fair. Weitenhagen then called Kinney. Weitenhagen testified that his conversation with Kinney involved a prior agreement by VPS not to accept any "extra work" assignments without first notifying the MPPA. Kinney testified that the MPPA's position on the fair security job was misrepresented to him when he initially agreed to work the fair and that upon speaking with Weitenhagen he felt obliged to abide by his prior agreement with MPPA not to accept the job. Kinney agreed to pull VPS off the fair.

DeLaMater apparently was on the line during this phone call but did not speak. The fair proceeded without incident, with the security provided by regular on-duty Marion police officers.

A complaint was filed following a letter from the Chamber of Commerce and statements by Newbanks regarding the security dispute and requesting an internal investigation. The day after the letter was forwarded to the police chief, a prohibited practice complaint against the MPPA was filed by the City of Marion. On August 4th a meeting was held concerning the internal investigation. Weitenhagen was handed an "internal investigation warning" which stated:

I wish to advise you that you are being questioned as part of an official investigation of the Marion Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all the rights and privileges guaranteed by the laws and the Constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

Weitenhagen asked for a union representative to be present at the meeting. That request was denied, but he was granted a request to make a phone call. In a conversation with Linda Clark, a union negotiator, she advised him it was illegal for the management of the police department to compel him to submit to interrogation about the prohibited practice complaint. When Weitenhagen returned to the room, the decision had been made to terminate the interview, apparently after management personnel had discussed the existence of the prohibited practice complaint. A second meeting was held the next day and Weitenhagen asked the officials to allow the union steward who accompanied him to be present during the meeting. His request was again denied, and Weitenhagen was handed the warning. Requests to tape

record the meeting were also denied. Varying versions are given of the exact phrasing of the question asked of Weitenhagen, but in essence the captain asked about Weitenhagen's conversation with Kinney. Weitenhagen gave the following written response:

> Without the opportunity to speak with a representative of my choice to determine whether or not my actions concerning this matter fall under the category of union activities under Chapter 20 of the Code of Iowa or if, in fact, my actions may be considered misconduct with disciplinary action pending, I feel I cannot accurately answer your question at this time.

The superior officers treated Weitenhagen's response as a refusal to answer the question, and he was fired.

DeLaMater subsequently was suspended by the City after he was allowed to review and respond to the record in this matter.

In vacating the discipline imposed on both officers, the trial court concluded, *inter alia,* that: (1) the burden of proof was on the City to establish misconduct of the officers; (2) Weitenhagen had no duty to answer the investigator's question regarding the conversation with Kinney because the question was not specifically and narrowly related to the performance of Weitenhagen's duties, the conversation with Kinney was not improper, and there were certain procedural irregularities in investigation; (3) there was insufficient evidence to prove that the officers had unlawfully interferred with the contract between Kinney and the Chamber of Commerce; and (4) the evidence was insufficient to show that DeLaMater was guilty of misconduct.

On appeal the City contends the trial court used the wrong standard of review, improperly allocated the burden of proof, erroneously found Weitenhagen and DeLaMater were not guilty of misconduct, erred in finding the statements to John Kinney were protected as free speech, and wrongly found Weitenhagen had no duty to answer the question presented to him.

The City has argued that the suspension of Weitenhagen by the Commission is inconsistent with the decision to reinstate DeLaMater, since the same set of facts applies to both. The City indicates that the case against DeLaMater stands or falls on the decision regarding misconduct relating to the attempts to prevent VPS and the reserves from working at the fair.

Our review of this case is de novo. Iowa R.App.P. 14(f)(7).

## I.

■ The City claims the burden of proof was improperly placed upon it. As pointed out by the officers, however, the City did not properly raise the issue regarding burden of proof. In a pretrial motion the officers requested a ruling that the burden be placed on the City, and the court so indicated in its pretrial order. A pretrial order controls subsequent court action. Iowa R.Civ.P. 138; *Int'l Milling Co. v. Gisch,* 256 Iowa 949, 955, 129 N.W.2d 646, 650 (1964). An objection to such an order cannot be raised for the first time on appeal. 4 C.J.S. §§ 284, 289(b) (1984).

Although the City has waived its right to challenge the burden of proof issue, it has properly raised the issue regarding standard of review. The pretrial order did not refer to the standard of review, and the standard to be used did not become apparent until the court issued its findings of fact and conclusions of law. There was no prior time when the issue was presented, and the City preserved error through its appeal of the court's findings.

■ It is undisputed that the review of the Civil Service Commission decision is de novo. Iowa Code § 400.27 (1983). In a de novo review, weight is given to the findings of the Commission, but the court is not bound by them. A hearing de novo means the case is heard again as if it had not been heard before. *Mason v. World War II Service Compensation Board,* 243 Iowa 341, 344, 51 N.W.2d 432, 434 (1952).

The City claims this applies only to the findings of fact, but that after the facts

have been determined anew, the chief of police or the Commission can be overturned in a decision only if it is arbitrary, unreasonable, or capricious, *citing McCormack v. Civil Service Comm'n of the City of Cedar Falls*, 315 N.W.2d 855, 858 (Iowa Ct.App.1981) and *Patch v. Civil Service Comm'n of the City of Des Moines*, 295 N.W.2d 460, 464 (Iowa 1980). However, this argument has been expressly rejected by the supreme court. *Sieg v. Civil Service Comm'n of West Des Moines*, 342 N.W.2d 824, 828 (Iowa 1983). The *Patch* case the City relies on was distinguished because it dealt not with the commission's ability to review a case, but with its ability to create an exam for police officers. *Id.* We affirm the trial court decision regarding its standard of review.

## II.

We next deal with the question of whether Weitenhagen and DeLaMater were properly discharged because of their actions regarding VPS and the reserves. The City says this resulted in misconduct as defined by the police manual because it frustrated security at a public event and because it impaired the discipline necessary in a police force.

 We agree with the City's contention that a police officer may be disciplined for off-duty conduct if it amounts to misconduct. *Millsap v. Civil Service Comm'n*, 249 N.W.2d 679, 687 (Iowa 1977). Police officers are involved in a semimilitary operation that involves the need for discipline. *Id.* at 685. The district court noted, however, that mere disapproval of a junior officer's off-duty conduct does not make the conduct proper subject for an internal investigation. In a case involving similar facts, the supreme court determined that firefighters who had sent out news releases regarding their labor dispute were not guilty of misconduct, and did not harm discipline necessary within the group. *Klein v. Civil Service Comm'n of Cedar Rapids*, 260 Iowa 1147, 152 N.W.2d 195 (Iowa 1967). The court noted, "The real and decisive question in the case at bar

may be pinpointed to the inquiry of whether the regulations ... are reasonable and necessary for proper departmental discipline and protection of public service.... There is not the slightest proof plaintiffs' conduct impaired the administration of the public service of which they were a part." *Id.* at 1156, 152 N.W.2d at 200.

We agree with the trial court that neither discipline nor public security was in danger with the officers' activities. The topic discussed with Kinney and the reserves involved extra work, an issue PERB had ruled was not a mandatory subject of bargaining, indicating the City did not have a sufficient interest in it to be required to negotiate the subject to the point of arbitration. The only real difference between whether the City provided police for security or whether the work was performed by off-duty officers, or VPS, was in who paid for the work done. If done as extra work, the private individual paid for it, if done by the City, the City paid its officers to be present. Security was not the real issue; it would be provided, and was provided in any event. The security at the fair was provided by on-duty police, and additional overtime police could have been called in. In addition, neither officer promoted a lack of discipline within the force, they contacted only volunteers. While the situation might be different if the officers had tried to convince police on-duty not to carry out their jobs, that did not occur here.

## III.

Counsel for the officers argues the internal investigation of the officers was a violation of the statute preventing harassment of employees engaged in union activities. Iowa Code § 20.10(2)(a) (1983). They also cite a number of improper procedures in connection with the investigation.

 Weitenhagen was denied his request to have a union representative present. Such a request is to be granted under the Nation Labor Relations Act. *NLRB v. Weingarten*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). The City notes cases which have gone both ways in

determining if a representative is allowed when the request is made by a public employee. PERB rulings indicate its opinion that representatives should be allowed when the request is made, and we agree that there is nothing in the nature of a public employee's work which would result in harm to the public if he or she is given such representation, in the same way harm would result if public employees were allowed to strike. *Dubuque Policemen's Protective Ass'n v. City of Dubuque*, PERB Case No. 948 (1977); *McCormick v. City of Cedar Falls*, PERB Case No. 1511 (1980). We hold Weitenhagen should have been allowed to have a representative present at the meeting.

The City claims its questioning was proper, arguing that it must conduct preliminary investigation to discover if a complaint about an officer is warranted. Therefore, the City should be given broad scope in its questioning in order to make such a determination. The only limit upon such questions, the City says, is that they not be general or exploratory. *Broderick v. Police Comm'n*, 368 Mass. 33, 39, 330 N.E.2d 199, 204 (1975).

The officers refer to the Supreme Court case on this subject which indicates that such questioning must be specifically, directly, and narrowly related to the officer's official duties. *Gardner v. Broderick*, 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082, 1086 n. 5 (1968). While questions leading to a determination of the validity of a complaint may be proper, the officers argue *Broderick* does not condone a wholesale fishing expedition.

We believe the trial court aptly disposed of the issue. It noted that prior to the questioning of Weitenhagen, the captain already knew whether the complaint was warranted because he had discussed the subject with Kinney. Further, the court observed that if the City is correct that a police officer should answer any question presented at an internal investigation, then the question arises why the warning given to Weitenhagen indicating, "You will be asked questions specifically directed and

narrowly related ..." to job performance. The court stated, "If the words mean what they say, and they must if the warning is to be given any effect, the interrogator is bound by them and cannot inquire into any matters ... that may have some remote connection or have some broad effect on the police function."

A police officer is allowed to decline a superior's order if he knows it is illegal, under section 1105.06 of the police manual. While the City claims that Weitenhagen did not know whether the question was improper, the evidence shows Weitenhagen was told by the union representative that the question was improper.

In addition, the trial court indicated the evidence was insufficient to show that he refused to answer the question. The answer given by Weitenhagen is somewhat ambiguous, but rather than pursuing the matter, the superior officers fired him at the meeting. The rules of the police department indicate that instead he should have been ordered to answer the question, or the information used to file charges which would have resulted in discharge, as confirmed by the warning given to Weitenhagen.

Therefore we conclude the trial court accurately found no misconduct occurred in the actions of the officers in contacting Kinney and members of VPS. We also agree that the procedures used at the internal investigation were improper in denying a union representative to Weitenhagen, in questioning him about a subject which was part of a labor dispute, and asking questions not narrowly and directly related to the officer's ability to perform his duty. There is ample reason to believe Weitenhagen's answer was not a refusal to answer, and that other methods rather than dismissal should have been used. For these reasons we affirm the trial court.

The City has also challenged the trial court finding that the actions were protected by free speech, and the officers contend a section of the police manual was unconstitutional. Because of our decision here,

we decline to address the constitutional issues.

AFFIRMED.