332 S.E.2d 579

**Don BUSKIRK**

v.

**CIVIL SERVICE COMMISSION OF WEST VIRGINIA, West Virginia Department of Health, Huntington State Hospital, et al.**

No. 16221.

Supreme Court of Appeals of
West Virginia.

March 22, 1985.

Concurring and Dissenting July 10, 1985.

Crandall, Pyles & Crandall, Grant Crandall, Richard Shapiro, Charleston, for appellant.

Dana D. Davis, Asst. Atty. Gen., Paul Richard Hull, Asst. Atty. Gen., Attorney General's Office, Charleston, for appellees.

PER CURIAM.

This is an appeal from a final order of the West Virginia Civil Service Commission, dated December 2, 1983, which upheld the dismissal of the appellant, Don Buskirk, a classified civil service employee, from his employment. The appellant seeks reinstatement to his former position without loss of pay on the grounds that (1) that the dismissal violated his procedural due process rights and (2) that there was no showing of good cause for the discharge. We find no merit in the appellant's assertions, and we affirm the ruling of the Civil Service Commission.

The appellant was an employee of the West Virginia Department of Health and had worked as a psychiatric aide at Huntington State Hospital since March 1968. On June 18, 1983, when the appellant was called upon to assist in the transfer of an unruly patient to another ward, an altercation ensued during which the appellant allegedly struck one patient and kicked another.

The incident was reported to Louise Rife, the hospital's Patient Advocate and the person charged with investigating allegations of patient abuse. Ms. Rife notified the hospital administrator, Dr. Charles J. Langan, and the Cabell County Prosecuting Attorney's office, which expressed a desire to investigate the incident for possible criminal prosecution. The Patients Rights Committee, the hospital's formal internal investigative body, met and voted to postpone any further action pending completion of the prosecutor's investigation.

During the following week, the appellant and a number of witnesses were interviewed by Ms. Rife and John McCallister, a representative of the prosecutor's office. On July 1, 1983, the Patients Rights Committee again met and, on the basis of a written case summary submitted by Mr. McCallister and an oral summary of the interviews, presented by Ms. Rife, voted to recommend the appellant's discharge on grounds of patient abuse. The appellant was not present at this meeting and no formal hearing was conducted. A report of the Committee's findings and recommendations was forwarded to Dr. Langan.

By letter dated July 7, 1983, Dr. Langan notified the appellant that he had been found guilty of gross misconduct in connection with the incident of June 18, 1983, and

that his employment was being terminated immediately, although he would remain on the payroll through August 4, 1983. The letter specified the facts underlying the appellant's dismissal and informed him that, upon request, "you shall be given an opportunity to either meet with me in person or to present me with a written explanation for the purpose of communicating to me any reason why you think the facts and grounds contained in this letter are in error or why you think this action is unmerited." Dr. Langan was subsequently contacted by telephone by Harold P. Schlechtweg, the appellant's union representative, but the appellant did not request a meeting with Dr. Langan or submit a written statement as provided in the discharge notice.

Instead, the appellant appealed the dismissal to the Civil Service Commission by letter dated July 9, 1983. Evidentiary hearings were conducted on November 7 and 15, 1983, at which the appellant appeared in person and by counsel. Both the appellant and the Department of Health introduced testimony concerning the incident giving rise to the charges and the procedures employed by the hospital in investigating the allegations and discharging the appellant.

On December 2, 1983, the Commission issued a memorandum order dismissing the appeal. The Commission concluded that the evidence warranted a finding that the appellant was guilty of gross misconduct and presented good cause for dismissal. The Commission also concluded that there was no basis for the appellant's contention that he had been denied procedural due process since the appellant's dismissal "was not arbitrary or capricious, was based on good cause and was effected only after Mr. Buskirk was given an adequate opportunity to provide evidence demonstrating that his discharge was not for good cause."

I

The appellant's first contention in this appeal is that the Civil Service Commission erred in affirming his dismissal because the hospital failed to afford him a meaningful opportunity to respond to the charges of misconduct prior to the July 7, 1983 discharge notice. His claim is predicated upon his assertion that he was guaranteed a pretermination hearing by Department of Health policy and by the due process clauses of the federal and state constitutions. Accordingly, he asserts that the hospital's failure to afford him such a hearing resulted in a wrongful discharge.

The appellant's claim that the hospital violated its own policies in failing to afford him a hearing prior to his dismissal is based on Department of Health Policy 8000, which establishes formal procedures for the internal investigation and resolution of complaints made by or on behalf of patients at state health facilities and, in cases of alleged patient abuse, provides for an evidentiary hearing before a three-member investigating committee prior to any formal action. The appellant contends that the hospital's failure to follow its own properly established procedures constitutes clear reversible error. *See Trimboli v. Board of Education*, 163 W.Va. 1, 254 S.E.2d 561 (1979); *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977).

A careful review of the provisions of Policy 8000 demonstrates, however, that they were intended primarily to protect "the civil, human and legal rights of patients in state operated facilities" rather than to establish the procedural rights of hospital staff. The procedures contained therein are applicable to complaints against other patients as well as to those against employees and are intended to provide a forum for airing serious patient grievances which might be suppressed through less formal procedures. Accordingly we conclude, as did the Civil Service Commission, that the provisions of Department of Health Policy 8000 provide no basis for the appellant to challenge his discharge from employment. His procedural rights are secured by the appropriate provisions of the state civil service law.[1]

1. The appellant's implicit recognition of the inapplicability of Policy 8000 procedures is evidenced by the fact that he chose to contest his dismissal by appeal to the Civil Service Commis-

■ We also reject the appellant's contention that he is entitled to a pretermination hearing under the constitutional guarantees of due process of law. We have recognized that a classified civil service employee has a sufficient interest in his continued interrupted employment to warrant the application of due process procedural safeguards to protect against the arbitrary discharge of such employee under Article 3, Section 10 of our constitution. *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977). "This Court has traditionally shown great sensitivity toward the due process interests of the government employee by requiring substantial due process protections," including, generally, predischarge notice and a hearing. *Major v. DeFrench*, 169 W.Va. 241, 286 S.E.2d 688, 697 (1982).

■ We have consistently held, however, that outside of the area of criminal law, due process is a flexible concept, and that the specific procedural safeguards to be accorded an individual facing a deprivation of constitutionally protected rights depends on the circumstances of the particular case. *Clarke v. West Virginia Board of Regents*, 166 W.Va. 702, 279 S.E.2d 169, 175 (1981); *Bone v. West Virginia Department of Corrections*, 163 W.Va. 253, 255 S.E.2d 919 (1979); *North v. West Virginia Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977). We have developed the following approach for balancing the competing interests at risk in any such case:

> The specific procedural protections accorded to a due process liberty or property interest generally requires consideration of three distinct factors: first, the private interest that will be affected by state action; second, the risk of an erroneous deprivation of the protected interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and third, the government's interest, including the functions involved and the fiscal and administrative burdens that the addi-

tional or substitute procedural requirements would entail.

Syllabus Point 5, *Major v. DeFrench, supra.*

The interests asserted by the appellant as entitling him to a predeprivation hearing are his property interest in his salary and his liberty interest in the stigma resulting from his discharge on grounds of gross misconduct. We have recognized that these are substantial private interests arising from the classified civil service employee's expectation of continued uninterrupted employment which are entitled to due process protection. *See Major v. DeFrench, supra; Waite v. Civil Service Commission, supra.*

■ The State asserts a compelling interest in protecting the rights and safety of persons in the care of state operated health facilities. It cannot be questioned that this is "an urgent function" of State government. *See Bone v. West Virginia Department of Corrections, supra.* Indeed, the State, through the Department of Health, is statutorily charged with protecting the rights of mental patients at state hospitals. *See E.H. v. Matin*, 168 W.Va. 248, 284 S.E.2d 232 (1981).

■ The critical factor in this case, however, is that the hospital offered the appellant an immediate opportunity to respond to the charges of misconduct and the discharge at the same time it notified him of the termination of his employment. As a consequence, it is difficult to see any "risk of an erroneous deprivation of the protected interest through the procedures used, [or] the probable value, if any, of additional or substitute procedural safeguards ...." *Major v. DeFrench, supra.* The appellant's property interest was not immediately affected by the dismissal, since he was allowed to remain on the payroll for almost a month following the effective date of the discharge. Any arbitrary impairment of the appellant's liberty interest would have been minimized by resort to this procedure. In short, the post-termination procedure offered the appellant by the hospital might

sion pursuant to W.Va.Code § 29–6–15 (1980 Replacement Vol.), rather than by appeal to the

Director of the Department of Health as provided by Policy 8000.

well have been adequate to protect his interests had he chosen to avail himself of it.[2] He did not, opting instead to pursue a direct appeal of his dismissal to the Civil Service Commission.

■ Even within the context of our balancing approach, we have maintained the presumption that " '[d]ue process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise.' Syl. pt. 2, (in part), *North v. West Virginia Board of Regents,* [160 W.Va. 248], 233 S.E.2d 411 (1977)." Syllabus Point 5, *Clarke v. West Virginia Board of Regents, supra.* While we do not favor agency reliance on post-termination procedural safeguards, we have recognized compelling circumstances in which prior notice and a hearing need not be given "where there is a continuing danger to persons or property or to the orderly conduct of the affairs of the agency. . . ." Syllabus Point 7, in part, *Waite v. Civil Service Commission, supra. See also Clarks v. West Virginia Board of Regents, supra; North v. West Virginia Board of Regents, supra.* We believe that the State has demonstrated sufficiently compelling circumstances in this case to warrant the action taken. Accordingly, we conclude that the hospital afforded the appellant a sufficient opportunity to respond to the charges to satisfy the requirements of due process.

## II

■ The appellant also contends that the Civil Service Commission erred in upholding the hospital's action because the dismissal was not for good cause. The "good cause" which will warrant discharge of a civil service employee was defined in Syllabus Point 1 of *Oakes v. West Virginia Department of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980):

> W.Va.Code, 29-6-15, requires that the dismissal of a civil service employee be

for good cause, which means misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention.

The appellant does not question that a civil service employee who commits acts of unjustified violence against a patient at a state hospital is guilty of gross misconduct which constitutes "good cause" justifying dismissal of such employee under this definition. *See Kendrick v. Johnson,* 167 W.Va. 269, 279 S.E.2d 646 (1981); *Scott v. Ernest,* 164 W.Va. 595, 264 S.E.2d 635 (1980). He asserts, however, that the evidence in this case was insufficient to show that he was guilty of such serious misconduct.

■ The appellant admits to having used physical force against two patients on June 18, 1983. The principal issue at the hearings below was whether the use of such force was justified in the circumstances. There was considerable conflict among the witnesses as to both the degree of force used by the appellant and the circumstances surrounding the use of such force. The Civil Service Commission, after hearing all the testimony and noting the demeanor of the witnesses, found that the appellant had, in fact, struck one patient and hit and kicked another and that the use of such force was "unwarranted" in the circumstances. We must defer to the Commission's findings of fact in this regard. "A final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." Syllabus point 2, *Vosberg v. Civil Service Commission,* 166 W.Va. 488, 275 S.E.2d 640 (1981). Since there was evidence to support the Commission's findings and conclusions, we find no error in the finding that the appellant used "unwarranted force."

---

2. The appellant implies that the post-termination opportunity to respond would not have been "meaningful", asserting that Dr. Langan told Mr. Schlechtweg, the appellant's union representative, over the telephone that the decision to discharge the appellant was not reversible.

This assertion was contradicted by Dr. Langan's testimony at the civil service hearing. Since the appellant chose not to invoke the opportunity to respond offered him by the hospital, there is no other evidence to support the appellant's contention.

▮ The appellant contends, however, that even if he was shown to have used excessive force in restraining the patients, the hospital's action in terminating his employment was too severe under the facts of the case. He first asserts that the hospital had failed to provide adequate training in the management of aggressive patients. We have recognized that it is improper to discharge a civil service employee for reasons which arise out of the government employer's failure to provide required training. *Airhart v. Carpenter*, 164 W.Va. 73, 260 S.E.2d 729 (1979). Here, however, the Commission specifically found that the appellant was a well-trained employee who had received instruction in the Mandt[3] system of patient management employed by the hospital since 1977, and was aware of the hospital policy prohibiting hitting or striking patients. After a review of the evidence, we cannot conclude that the Commission's findings are clearly wrong.

▮ The appellant also contends that discharge was unwarranted in view of his long years of service and his admittedly excellent work record. We have held that the work record of a long time civil service employee is a factor to be considered in determining whether discharge is an appropriate disciplinary measure in cases of misconduct. *See Blake v. Civil Service Commission*, 172 W.Va. 711, 310 S.E.2d 472 (1983); *Serreno v. West Virginia Civil Service Commission*, 169 W.Va. 111, 285 S.E.2d 899 (1982). In this case the Civil Service Commission clearly considered the appellant's past record but concluded that, in spite of his many years of service, the serious nature of the charges warranted dismissal. We find no error in this conclusion.

▮ Finally, we reject the appellant's contention that his behavior was justified to some extent by the fact that patient assaults upon staff members were commonplace. The Civil Service Commission addressed this issue in the following manner:

> We cannot accept the facile argument that the dangers of the job of an aide (Health Service Technician) are so dangerous that resort to force is required. Acceptance of that philosophy runs counter to enlightened advances in care of patients in our state mental hospitals. Undoubtedly force has been condoned in years past but no longer....
>
> Let us state without any reservations, hesitation or doubt: unwarranted force upon patients by aides at state mental hospitals will not be tolerated.

We find this statement in keeping with the principles enunciated in *E.H. v. Matin, supra.*

For the reasons stated above we find no error in the Civil Service Commission's determination that the appellant was properly discharged from his employment for good cause. Accordingly the December 2, 1983 order of the Civil Service Commission upholding the appellant's dismissal is hereby affirmed.

Affirmed.

McGRAW, Justice, concurring in part and dissenting in part:

I disagree with the conclusion of a majority of the Court that there was no error in the hospital's failure to afford the appellant a pretermination hearing. Such a hearing is clearly contemplated under the provisions of W.Va.Code § 29–6–10(11) (1980 Replacement Vol.) and under the Department of Health's Policy 8000. As the majority notes, the failure of the hospital to follow its own properly established procedures constitutes reversible error. *Trimboli v. Board of Education*, 163 W.Va. 1, 254 S.E.2d 561 (1979); *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977).

---

**3.** The Mandt system establishes six graded levels of external control—gesture, verbal, body positioning, touch, holding and restraining and transporting—and trains practitioners to respond to aggressive or uncooperative patients by using the least level of external control possible. Each level is designed to de-escalate the situation and escalation to the next level of external control is taken only after consideration of the situation and the need to restrain the patient. The Mandt system never allows kicking, slapping or striking of patients.

For this reason, I am of the opinion that the appellant's discharge from employment without a pretermination hearing was wrongful in the first instance, and I would reverse the decision of the Civil Service Commission on that ground. I concur in the majority opinion, however, insofar as it affirms the Commission's finding, after a full and fair hearing, that the appellant was dismissed for good cause. Accordingly, I would affirm the Commission's decision to uphold the appellant's discharge, but I would remand the case with directions that the appellant be awarded back pay for the period between the date of his wrongful discharge and the date of the completion of the Commission's hearings, with proper consideration being given to mitigation of damages. *See Clarke v. West Virginia Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981).