365 S.E.2d 797

**Ricky C. SWIGER**

v.

**CIVIL SERVICE COMMISSIONER and Department of Corrections.**

**No. 17520.**

Supreme Court of Appeals of West Virginia.

Dec. 17, 1987.

Dissenting Opinion Feb. 19, 1988.

Grant Crandall, William D. Turner, Charleston, for Swiger.

Charlie Brown, Atty. Gen., for Civil Service Com'r.

NEELY, Justice:

On January 20, 1986, State Senators Karras and Loehr were touring the West Virginia Penitentiary at Moundsville on behalf of a Select Senate Committee investigating the New Year's Day riots. The Senators were accompanied by Warden Hedrick, Major Littell, and Sergeant LeMasters. Appellant, Ricky C. Swiger, was on duty as a Correctional Officer I and asked Sgt. LeMasters if they were the Senate Investigating Committee because Mr. Swiger wanted to discuss security problems with them. Appellant received no response after asking the question three times. Major Littell later testified that he answered Mr. Swiger, but that appellant apparently did not hear him. In any event, appellant then became frustrated, saying, "That's the fucking trouble with this place; nobody will tell nobody nothing!" As Mr. Swiger stormed off, he threw a soda can against a wall.

Senator Karras then asked Warden Hedrick who petitioner was and was told, "that was Mr. Swiger, a member of the union." Senator Karras stated that Mr. Swiger's actions constituted gross insubordination and that he should be fired immediately.

Appellant was advised by letter dated January 21, 1986, that he was being discharged for misconduct, effective February 6, 1986, and that appellant had a right to meet with Warden Hedrick by January 29, 1986 for the purpose of stating why the action was unwarranted. By letter dated January 28, 1986, Mr. Swiger requested such a meeting and asked that a Communication Workers of America Union Representative be allowed to accompany him. Warden Hedrick refused to meet with Mr.

Swiger in the presence of a union representative, so no meeting took place.

Mr. Swiger filed an action with the Civil Service Commission and by order dated October 7, 1986, the Commissioner concluded that although Mr. Swiger's conduct was unacceptable, it warranted less than discharge in light of the tense circumstances surrounding his case and his good service record for ten years as a state employee. The Civil Service Commission directed that Mr. Swiger be reinstated within three weeks of its October 7, 1986 order, without approximately eight months back pay or other benefits.

Petitioner appealed the Civil Service Commission's order to this Court, asserting that his constitutional and statutory rights were violated by the Department of Correction's refusal to allow a union representative to attend his pretermination meeting with Warden Hedrick. We disagree.

### I

■ Appellant asserts that he had a statutory right to union representation at the pre-disciplinary meeting with Warden Hedrick under *W.Va.Code*, 29–6–10(11) [1977].[1] Appellant urges that a union representative's presence would allow resolution of many potential employment disputes at an early stage. *W.Va.Code* 29–6–10(11) [1977] provides that an employee may request to meet *personally* with the employer or his representative. However, the *Code* is silent about a right to representation and there is no evidence of legislative intent that a right to representation be implied. Because the statute does not mention representation, whether an employee can be accompanied by a representative (either an attorney or a union representative) would clearly rest within the discretion of the employer. Therefore, we see no violation of *W.Va.Code*, 29–6–10(11) [1977] when Warden Hedrick refused to meet with Mr. Swiger and his union representative.

### II

Next, we must determine whether the procedural requirements of *W.Va.Code*, 29–6–10(11) [1977] are within the constitutional perimeters of the due process clause of the Fourteenth Amendment.

An essential principle of due process is that a deprivation of life, liberty, or property must "be preceded by notice and opportunity for a hearing appropriate to the nature of this case." *Mullane v. Central Hanover Bank of Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 657, 94 L.Ed. 865 (1950). This principle evolved from "the root requirement" of the Due Process Clause, *i.e.*, "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) [Emphasis in original]; *See, Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).[2]

The need for some form of pretermination hearing recognized in these cases is evident from a balancing of the competing interests at stake. These are the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees, the avoidance of administrative burdens, and

---

1. *W.Va.Code*, 29–6–10(11) [1977] provides, in pertinent part:

   "Discharge or reduction of these employees shall take place only after the person to be discharged or reduced has been presented with the reasons for such discharge or reduction stated in writing, and has been allowed a reasonable time to reply thereto in writing, or upon request to appear *personally* and to reply to the appointing authority or his deputy." [Emphasis added.]

2. In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court found constitutional minima satisfied when the employee had access to the material upon which the charge was based and could respond orally and present rebuttal affidavits. 416 U.S. at 152–154, 94 S.Ct. at 1643–1644.

the risk of an erroneous termination. *See, Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ In West Virginia, we have followed the U.S. Supreme Court guidelines discussed above concerning the extent of due process protections. Using the formula from *Mathews v. Eldridge, supra*, we have recognized that a classified civil service employee has a sufficient interest in his continued, uninterrupted employment to warrant the application of due process procedural safeguards to protect the employee against arbitrary discharge. Article III, Section 10 of the *W.Va. Constitution. Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

We clarified this right in Syl. Pt 3 of *Fraley v. Civil Service Commission*, 177 W.Va. 729, 356 S.E.2d 483 (1987) when we held that all permanent civil service employees have a property interest arising out of the statutory entitlement to continued, uninterrupted employment. This guaranteed property interest we found required a pretermination hearing before discharge:

"The Constitutional guarantee of procedural due process requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." 177 W.Va. at 730, 356 S.E.2d at 484.

In *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977) cert. denied 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986), we treated at some length the procedural safeguards required under Article III, Section 10 of the *W.Va. Constitution*. We discussed the concept of "liberty" and "property" interests triggering due process requirements when a person was adversely affected by State action. Our holding in *North* along with *Fraley* and *Waite*, demonstrates that in analyzing our State's constitutional due process standard, we are free to consider the applicable federal constitutional standards. Ultimately, however, we must be guided by our own principles in establishing our State standards, recognizing that so long as we do not fall short of the federal standard, our determination is final. *See, Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

■ In syllabus point 2, in part, of *North v. W.Va. Board of Regents, supra*, we recognized that applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. *See, also, Buskirk v. Civil Service Commission of West Virginia*, 175 W.Va. 279, 332 S.E.2d 579 (1985); *Clark v. West Virginia Board of Regents*, 166 W.Va. 702, 279 S.E.2d 169, 175 (1981); *Bone v. West Virginia Department of Corrections*, 163 W.Va. 253, 255 S.E.2d 919 (1979); *Major v. DeFrench*, 169 W.Va. 241, 286 S.E.2d 688, 697 (1982). Under *W.Va.Code*, 29–6–1 [1977] *et seq*, the appellant in the present case was later entitled to a full administrative hearing and judicial review. The *Code's* pretermination hearing is not designed definitively to resolve the propriety of the discharge; it is merely designed to determine whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. *See, Fraley v. Civil Service Commission*, 177 W.Va. at 732, 356 S.E.2d at 486. We find no constitutional or statutory requirement that a union representative must be able to attend such a fact-finding meeting.

Recently, the United States Supreme Court reviewed dismissal of two state civil service employees in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and held as follows:

"The essential requirements of due process are notice and an opportunity to respond. The opportunity to present reasons either in person or in writing, why proposed action should not be taken is a fundamental requirement. *See*, Friendly 'Some Kind of Hearing,' 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story ... *To require more than this prior to termination would intrude to an unwarranted extent on the govern-*

*ment's interest in quickly removing an unsatisfactory employee."* [Emphasis Added]

470 U.S. at 546, 105 S.Ct. at 1495–1496.[3]

We find *Loudermill* to be controlling in the present case and hold that *W.Va.Code,* 29–6–10(11) [1977] is within the due process requirements articulated in that case. In *Loudermill,* the court held that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the state statute. *W.Va.Code,* 29–6–10(11) [1977] passes constitutional muster because it specifically allows for a pretermination opportunity to respond, along with a post-termination administrative hearing. ·

## III

■ Appellant asserts that this is not a procedural due process case but rather one that addresses appellant's rights to union representation and that the denial of union representation at his pretermination hearing was an unfair labor practice. The primary reasons for the right to union representation claimed by appellant are: (a) his right under the *W.Va. Constitution* and *U.S. Constitution* to associate freely with co-employees in a labor organization, *Woodruff v. Board of Trustees of Cabell Huntington Hospital,* 173 W.Va. 604, 319 S.E.2d 372 (1984) and (b) his labor union's right to engage in advocacy and other fundamental activities, *NAACP v. Button,* 371

U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

Appellant would liken the facts of the present case to those in *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). In *Weingarten,* during the course of an investigatory interview at which a private employee was being interrogated about reported thefts at the employer's store, the employee was denied the presence of her union representative at an interview.[4] However, *Weingarten,* is not controlling in the present case because it addressed the rights of a private sector employee who was compelled to appear at an investigatory interview. Furthermore, *Weingarten* is distinguishable from the present case because it dealt with the National Labor Relations Act as applied in the *private* sector. Therefore, *Weingarten* is irrelevant as the Civil Service Commission statutes are clearly different from the N.L.R.A.

In *Sperling v. Helsby,* 400 N.Y.S.2d 821, 60 A.D.2d 559 (1977), a civil service employee arrived at an investigatory interview with a union representative. The representative was not allowed to attend the interview and the employee filed an improper practice charge. The Public Employee Relations Board dismissed the charges and, on appeal, the court affirmed the administrative agency's ruling. The *Sperling* court rejected the petitioner's contention that *NLRB v. Weingarten* af-

3. Loudermill reviews two consolidated cases. James Loudermill, a security guard for the Board of Education, was fired for lying on his job application. Additionally, Richard Donnelly, a bus mechanic, was fired because he failed an eye examination. Both men appealed their dismissals to the Ohio Civil Service Commission. Loudermill's dismissal was upheld by the Commission, but Donnelly was ordered to be reinstated without back pay. Both men took their cases through the court system, challenging the constitutionality of Ohio's dismissal procedures.

Ohio Rev.Code Ann. § 124.24, Ohio's civil service dismissal statute, stated that the dismissed employee was to be provided with a copy of the order of removal giving the reasons for his discharge. Within ten days of filing the order with the Director of Administrative Services, the employee could file a written appeal with the state personnel board of review or Civil Service Commission. Unlike *W.Va.Code,* 29–6–10(11) [1977], there was no procedure to present a reply to the termination or request an appearance before the appointing authority.

4. Specifically, the U.S. Supreme Court affirmed the NLRB's holding that respondent employer's denial of an employee's request that her union representative be present at an investigatory interview that the employee reasonably believed might result in disciplinary action constituted an unfair labor practice in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1973), because it interfered with, restrained, and coerced the individual right of the employee, protected by § 7 of the Act, "to engage in ... concerted activities for ... mutual aid or protection." 29 U.S.C. § 157 (1973).

fords a *public* employee the right to union representation at an investigatory interview if he reasonably believes the investigation will lead to adverse employer action:

"But *Weingarten* is not controlling for it is concerned with the plight of a private sector employee who is compelled to appear at such an interview. Here not only does the applicable law, Civil Service Law § 209–a.3 specifically recognize the existence of a fundamental distinction between public and private employment but in addition Civil Service Laws afford public employees more protection throughout the process of investigation and disciplinary proceedings than the private processes noted in *Weingarten*."

400 N.Y.S.2d at 822, 60 A.2d 559.

Our research indicates that the outcome of State court rulings applying *Weingarten* to public employees depends on the scope and protection of each state's civil service laws. If the civil service laws do not offer specific procedural due process protections, civil service agencies and courts have adopted the rationale of *Weingarten* to guarantee public employees the same rights as private employees. *See, City of Clearwater v. Lewis*, 404 So.2d 1156 (Fla. App.1981); *City of Marion v. Weitenhagen*, 361 N.W.2d 323 (Iowa App.1984). However, in states where the civil service laws afford public employees more protection throughout the process of investigation and termination than private employees, the courts have refused to interpret a right to a union representative at a pretermination hearing. Rather, in those states, the courts leave that right to be determined by the collective bargaining process and the state legislature. *See, Sperling v. Helsby, supra; Pennsylvania Social Services Union v. Com. Dept. of Labor & Industry*, 105 Pa.Cmwlth. 264, 524 A.2d 1005 (1987); *New Orleans Ass'n. of Firefighters Local 632 v. Civil Service Comm. of City of New Orleans*, 495 So.2d 958 (La.App.1986) writ denied, 499 So.2d 84 (1987); *Danielson v. City of Seattle*, 45 Wash.App. 235, 724 P.2d 1115 (1986) affirmed 108 Wash.2d 788, 742 P.2d 717 (1987); *Cameron v. Dept. of State Police*, 139 Mich.App. 199, 361 N.W.2d 765 (1984);

*DeCherro v. Civil Service Employees Association*, 400 N.Y.S.2d 902, 60 A.D.2d 743 (1977).

We find that our civil service laws, *W.Va.Code*, 29–6–1 [1977] *et seq* specifically recognize the existence of fundamental distinctions between public and private employees. Furthermore, the purpose of our state civil service laws is to "provide security of tenure to public employees who are within the system." *Guine v. Civil Service Comm'n.*, 149 W.Va. 461, 141 S.E.2d 364 (1965); *Baker v. Civil Service Comm'n.*, 161 W.Va. 666, 245 S.E.2d 908 (1978); *Blake v. Civil Service Commission*, 172 W.Va. 711, 310 S.E.2d 472 (1983). Finally, our civil service laws, *W.Va.Code*, 29–6–1 [1977] *et seq* afford public employees more protection throughout the critical stages of investigation and disciplinary proceedings than private employees. All our civil service employees have the right to appeal termination decisions to an administrative agency and the state courts. They enjoy broad procedural due process rights that are strictly enforced. If the Legislature wishes to provide further due process rights to union representation before termination, it may amend *W.Va.Code*, 29–6–10(11) [1977].

Affirmed.

McGRAW, Justice, dissenting:

From the majority's holding that denial of union representation at a pretermination hearing does not violate a public employee's rights of expression and association, I respectfully dissent.

In *Woodruff v. Board of Trustees of Cabell Huntington Hospital*, 173 W.Va. 604, 319 S.E.2d 372, 379 (1984), this Court recognized that public employees possess certain fundamental rights, including rights of expression, assembly, association, and petition, under both the state and federal constitutions.

In the instant case, rights of expression, association, and petition were unquestionably implicated. The appellant, who had already been informed that he was being discharged for insubordination following a

failed attempt to express his views regarding prison conditions to a contingent of legislators conducting an investigation of such conditions, specifically requested the presence of a union representative at his pretermination hearing. He was informed, prior to this hearing, that it was his burden to show cause why his employment should not be terminated. He was understandably apprehensive about confronting the warden alone. Moreover, his supervisor's comment concerning his union affiliation raised the spectre of retaliation for such membership. This implicated not only the appellant's individual interests, but also those of his union.

Failure to recognize a right to representation at disciplinary proceedings places public employee unions in a difficult position. The majority opinion directly conflicts with the affirmative obligation of public employee unions, often imposed by contract, to actively represent their membership. If unable to fulfill such obligation, especially when possible discipline, including termination, is involved, public employee unions lose much of their efficacy. Additionally, they will be perceived by their membership to have breached an important element of their contractual relationship. Only through advancement of the interests of its membership can a union realize its representation function.

The United States Supreme Court observed in *N.L.R.B. v. Weingarten, Inc.,* 420 U.S. 251, 260–61, 95 S.Ct. 959, 965, 43 L.Ed.2d 171, 180 (1975), that:

> The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview.

Moreover, after noting that a stated goal of the National Labor Relations Act is to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of ... mutual aid or protection," the Court in *Weingarten* noted, "To that end the Act is designed to eliminate the 'inequality of bargaining power between employees ... and employers.' ... Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the Act was designed to eliminate...." *Id.* at 262, 95 S.Ct. at 966, 43 L.Ed.2d at 180.

In my view, the associational rights protected under the federal and state constitutions are analogous to those protected under the National Labor Relations Act. In addition, rights of expression and petition are implicated in the public employment context. In *City of Marion v. Weitenhagen,* 361 N.W.2d 323, 328 (Iowa App.1984), the court commented that, "[T]here is nothing in the nature of a public employee's work which would result in harm to the public if he or she is given such representation...." I wholeheartedly agree. To the contrary, I believe that the public is best served by staunch protection of fundamental rights of expression, association, and petition. To the degree that the majority strays from this path, I respectfully dissent.

McHUGH, C.J., joins in this dissent.