## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**West Virginia Division of Natural Resources,**
**Respondent Below, Petitioner**

**FILED**
**April 9, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0130** (Kanawha County 13-AA-100)

**James Franklin Williams**
**Grievant Below, Respondent**


## MEMORANDUM DECISION

Petitioner West Virginia Division of Natural Resources ("DNR"), by counsel William R. Valentino, appeals the final order of the Circuit Court of Kanawha County filed January 10, 2014, enforcing the Decision of the West Virginia Public Employees Grievance Board (the "Board") in favor of Respondent James Franklin Williams, represented by Michael E. Froble.  The DNR dismissed Mr. Williams as Supervisor of Maintenance at Hawks Nest State Park, classified by the West Virginia Division of Personnel ("DOP") as a Building Maintenance Supervisor II.  The Board's Decision of August 19, 2013, reinstated Mr. Williams, and it awarded him back pay.

Upon consideration of the record on appeal, the parties' briefs, and their oral arguments, this Court discerns no substantial question of law and determines that no prejudicial error affected the proceedings below.  For those reasons, a memorandum opinion affirming the circuit court's order is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Williams began his employment at Hawks Nest on September 10, 2012, under the supervision of Joe Baughman, the park's Assistant Superintendent.  Mr. Baughman, in turn, reported to Superintendent John Bracken.  On September 19, 2012, about one week after he had first arrived at work, Mr. Williams made a sexually overt remark to one or more colleagues concerning a female co-worker, as a consequence of which DNR Director Frank Jezioro suspended him for two days without pay.  Later that autumn, the same co-worker filed suit against the DNR in the Circuit Court of Kanawha County, alleging, *inter alia*, that Superintendent Bracken had sexually harassed her (the "sexual harassment litigation").

Mr. Williams completed the remainder of his six-month probationary period without incident.  Near the close of his probation, on March 4, 2013, Mr. Williams was

1

evaluated by Superintendent Bracken and rated "good." Almost immediately thereafter, however, in late March 2013, Superintendent Bracken began to document deficiencies that he perceived in Mr. Williams's job performance. On April 24, 2013, Superintendent Bracken issued a written Performance Improvement Plan ("PIP") to Mr. Williams detailing those deficiencies and establishing a ninety-day period whereby certain job standards and benchmarks were to be achieved.[1]

About two weeks following institution of the PIP, on May 9, 2013, Mr. Williams and Assistant Superintendent Baughman had a conversation in the latter's office. During this conversation, Mr. Williams mentioned to Mr. Baughman that "Mr. Bracken had better back off" the PIP, else he would bring to light certain statements that the superintendent had allegedly made to him concerning the sexual harassment litigation. Mr. Baughman reported the conversation — which he "construe[d] . . . as a threat" from Mr. Williams — to Superintendent Bracken. In so doing, Mr. Baughman recommended that Superintendent Bracken abandon the PIP "because [Mr. Williams] might say something or do something that would be detrimental to this case that you're involved with."[2]

---

[1] Although Assistant Superintendent Baughman stood in the position of immediate supervisor to Mr. Williams, the record suggests that their professional relationship was quite amicable and that Mr. Williams often took Mr. Baughman into his confidence as one might ordinarily confide in a peer. Many of the supervisory responsibilities concerning Mr. Williams were undertaken instead by Superintendent Bracken, who contended that he devised the PIP because Mr. Williams "was not performing [his] duties as we needed him to." Mr. Williams countered that the PIP was a pretext, imposed in retaliation for his refusal to accede to Superintendent Bracken's repeated demands that Mr. Williams use his private contracting license to purchase Freon for repairs to refrigeration and HVAC equipment at the park. Mr. Williams explained that such procurements are heavily regulated and that he was fearful of losing his license were he to attempt to obtain Freon in a manner inconsistent with those regulations. For purposes of our analysis, the salient point is that the PIP existed; the rationale supporting its imposition is less important.

[2] Mr. Williams flatly refuted Mr. Baughman's version of the conversation. The Administrative Law Judge conducting the hearing on behalf of the Board, however, specifically found that "[b]ased solely upon witness credibility, [the DNR] established by a preponderance of the credible evidence that [Mr. Williams] engaged in the conduct alleged." More to the point, according to the ALJ, "there was no credible evidence to suggest that Superintendent Bracken conspired with Assistant Superintendent Baughman to fabricate this charge."

Superintendent Bracken opted instead to relay Mr. Baughman's report up the supervisory chain, with the result that Mr. Williams soon found his employment terminated by the DNR. In the letter of dismissal delivered May 22, 2013, Director Jezioro explained that he had decided to separate Mr. Williams from employment after "reviewing [his] threat and having considered the obviously gross and egregious intent to subvert the improvement plan and the Superintendent's authority." Elaborating, the Director recounted his belief that Mr. Williams had "attempt[ed] to intimidate and threaten the Superintendent and coerce the Superintendent away from fulfilling his supervisory responsibilities."

The next day, May 23, 2013, Mr. Williams filed a Level Three grievance challenging his dismissal. *See* W. Va. Code § 6C-2-4(a)(4) (2008) (providing that "[a]n employee may proceed directly to level three . . . when the grievant has been discharged"). Following an evidentiary hearing on July 30, 2013, the presiding Administrative Law Judge ("ALJ") rendered the Board's written Decision on August 19, 2013. Therein, the ALJ concluded that "it was not demonstrated that [Mr. Williams's] statements constituted a serious threat of harm or wrongdoing, and it appears that the [DNR's] reaction to these statements was inappropriate and grossly excessive." The ALJ observed that Mr. Baughman "did not admonish [Mr. Williams] for this supposed threat," or "make any effort to clarify" the statement's meaning, further faulting Mr. Baughman for waiting until after work to report the conversation. The ALJ thought it relevant "that there was no allegation that [Mr. Williams] ever stated he was going to make something up or say anything regarding Superintendent Bracken that was not true." At the end of the day, the ALJ mused, "this is just one supervisor grousing to another about his treatment by their mutual boss, rather than a threat of real or actual harm." The ALJ thus granted the grievance and ordered Mr. Williams reinstated with full back pay, plus interest.

On August 23, 2013, the DNR timely appealed the Board's Decision to the Circuit Court of Kanawha County. *See* W. Va. Code § 6C-2-5(c) (2007). The circuit court denied the appeal by its Order of January 10, 2014, agreeing with the ALJ that the evidence did not show that Mr. Williams had threatened Superintendent Bracken. Absent a credible threat, reasoned the circuit court, "the Board was not clearly wrong nor abused its discretion finding that the allegations of misconduct did not constitute good cause for the dismissal of Williams." The DNR noticed the instant appeal from the circuit court's Order on February 5, 2014.

The Board's Decision reinstating Mr. Williams must be permitted to stand unless it was clearly wrong. *See* Syl. pt. 3, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011) ("'A final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va. Code, [6C–2–1],

3

*et seq.* [ ], and based upon findings of fact, should not be reversed unless clearly wrong.'" (quoting syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989))). The ultimate disposition of a grievance appeal frequently turns on the deference properly afforded the ALJ's findings of fact and concomitant assessment of the witnesses' credibility:

> [A] reviewing court is obligated to give deference to factual findings rendered by an administrative law judge[; thus], a . . . court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

In his decision below, the ALJ relied on Board precedent and referenced the Workplace Security Policy promulgated by the DOP, which lists several criteria designed to evaluate the danger posed by threatening or assaultive behavior. The DOP criteria include: (1) the recipient's perception that the threat is real; (2) the nature and severity of harm if the threat is realized; (3) the likelihood that such harm will result; (4) the imminence of the threatened harm; (5) the duration of risk; and (6) the past behavior of the source of the threat. *See Burkhammer v. Dep't of Health & Human Res.*, No. 03-HHR-276, 2003 WL 22978082 (W. Va. Pub. Emp. Grievance Bd. Nov. 12, 2003), at *4.

In a case such as here, where a disputed statement is pivotal to the determination of what transpired, the latitude accorded the ALJ to make credibility assessments is crucial to the proper resolution of the issues raised. Evaluating all of the criteria together and examining the totality of the circumstances in which the statements were made, the ALJ was not clearly wrong in declining to find that Mr. Williams engaged in misconduct justifying his dismissal. The ALJ looked behind the superficiality of the particular statements and Mr. Baughman's reaction to them to consider also their rather vague and contingent nature, the amicable relationship between the speaker and the listener, and the frustration that Mr. Williams was no doubt feeling near the onset of the PIP, all to conclude that the supposed threat was empty.[3]

---

[3] The Board decisions cited by the ALJ recognize, albeit implicitly, that specific threats are more credible than vague ones. *Compare Burkhammer* at *2 (dismissal upheld where grievant specifically warned estranged co-worker that "if he couldn't have

(continued . . .)

4

If a civil service employee is to be dismissed, the dismissal must "be for good cause, which means misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention." Syl. pt. 1, *Oakes v. W. Va. Dep't of Fin. & Admin.*, 164 W. Va. 384, 264 S.E.2d 151 (1980). The circuit court explained that an act evidencing "willful disregard of the employer's interest or a wanton disregard of standards of behavior which the employer has a right to expect" permits an employer to conclude that its employee has engaged in misconduct sufficiently gross to justify dismissal. *Graley v. W. Va. Parkways Econ. Dev. & Tourism Auth.*, No. 91-PEDTA-225 (W. Va. Pub. Emp. Grievance Bd. Dec. 23, 1991) at 41 (citing *Buskirk v. Civil Serv. Comm'n*, 175 W. Va. 279, 332 S.E.2d 579 (1985)).

A chastened employee who unwisely blurts out an imagined retribution against the source of his frustration may lack firm control of his emotions, but if the words spewed forth are not intended to be taken seriously, the employee has merely exhibited poor judgment and not substantial misconduct. The ALJ found that the statements made by Mr. Williams, taken in context, amounted to grousing or blowing off steam. Based on the record before us, that finding is not clearly wrong, and it must therefore be accepted as the definitive resolution of the most critical material fact underlying this employment dispute. Absent a serious threat from Mr. Williams, the DNR was without good cause to dismiss him.[4]

---

[her], then no one else ever would," and that he would kill himself after "tak[ing] care" of her and others) *with Jefferson v. Shepherd Univ.*, No. 07-HE-116, 2008 WL 2226722 (W. Va. Pub. Emp. Grievance Bd. Mar. 12, 2008) at *1 (no palpable threat where grievant complained generally to co-worker about supervisor that "[i]f it were not for my wife and kids, it would come to blows," and "[s]ometimes I am so angry I could come out swinging"), *and Bowe v. Workers' Comp. Comm'n*, 04-WCC-268 (W. Va. Pub. Emp. Grievance Bd. Oct. 27, 2004) at 4 (grievant's statement that supervisor "better have his ducks in a row, because shit will hit the fan" communicated no serious threat of violence).

[4] The DNR urges that even if the statements did not constitute gross misconduct, they nonetheless amounted to misconduct to a sufficient degree to justify a lesser disciplinary action, particularly in light of the prior suspension of Mr. Williams for making sexually inappropriate remarks. Specifically, DNR complains in its petition for appeal that the Board's exoneration of Mr. Williams "depriv[ed it] from citing this incident for purposes of progressive discipline should [he] engage in similar, or even different, misconduct in the future." At oral argument, however, the DNR advised us that Mr. Williams has voluntarily left his employment in the classified service. Inasmuch as

(continued . . .)

For the foregoing reasons, we affirm the circuit court's order of January 10, 2014, upholding the Board's Decision of August 19, 2013, reinstating Mr. Williams and awarding him back pay.

Affirmed.

**ISSUED: April 9, 2015**

**CONCURRED IN BY:**

Acting Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II
Judge Christopher D. Chiles, sitting by temporary assignment

**DISQUALIFIED:**

Chief Justice Margaret L. Workman

---

there is virtually no possibility that the scenario envisioned by the agency will occur, its argument for alternative discipline has been effectively mooted.