317 S.E.2d 159

Teresa M. DeVITO

v.

The BOARD OF EDUCATION, etc., et al.

No. 15885.

Supreme Court of Appeals of West Virginia.

June 8, 1984.

---

Jacqueline A. Kinnaman, West Virginia Education Assoc., Charleston, for appellants.

Charles E. Anderson, Pros. Atty., Fairmont, for appellee.

HARSHBARGER, Justice:

Teresa M. DeVito, a school teacher, was dismissed for wilful neglect of duty by the Marion County Board of Education (the Board) because she distributed "Fritz the Cat" cartoons to an art class. The Circuit Court of Marion County affirmed the Board. On this second appeal of this case, we again reverse the circuit court.

■ The facts of this case are stated in *DeVito v. Board of Education of Marion County*, 169 W.Va. 53, 285 S.E.2d 411 (1981) (*DeVito I*). In *DeVito I* the Court relied upon syllabus point three of *Beverlin v. Board of Education of Lewis County*, 158 W.Va. 1067, 216 S.E.2d 554 (1975), which holds: "The authority of a county board of education to dismiss a teacher under W.Va.Code (1931), 18A–2–8, as amended, must be based upon the just causes listed therein and must be exercised reasonably, not arbitrarily or capriciously." *See also* Syllabus, *DeVito v. Board of Education of Marion County, supra;* Syllabus, *Fox v. Board of Education of Doddridge County*, 160 W.Va. 668, 236 S.E.2d 243 (1977).[1] We stated in *DeVito I* that: "It is important that the harsh remedy of dismissal of a teacher of eighteen years tenure not be exercised in the absence of a showing of just cause and dismissal must be exercised reasonably, not arbitrarily or capriciously." 169 W.Va. at 54–55, 285 S.E.2d at 412.

In *DeVito I* we relied upon the trial court's representations that "the proceedings before the School Board smacked of prejudgment against DeVito." 169 W.Va. at 54, 285 S.E.2d at 412. We noted that "it is not clear from the record whether just cause to dismiss existed." *Id.* We held that the record was insufficient to support a finding of wilful neglect of duty and that the harsh remedy of dismissal is an arbitrary and capricious exercise of authority in the absence of a finding that the appellant had intentionally distributed the objectionable materials. Accordingly, we remanded the case "for the purpose of hearing and determining whether DeVito's action occasioning her dismissal was intentional or merely inadvertent or careless." 169 W.Va. at 55, 285 S.E.2d at 412.

Upon remand, the Board declined to submit additional evidence on the issue of intent, instead chosing to submit the matter on the record which this Court had determined to be insufficient to support the appellant's dismissal. The trial court held that the Board had "proved a *prima facie* case of intentional passing out of materials by virtue of the fact that they were passed out ...." Additional evidence was presented on behalf of the appellant, all of which was exculpatory in nature and supported the appellant's claim that her actions were not intentional.

In its memorandum opinion the lower court noted that the appellant has consistently denied that her actions were intentional, and that the appellant's honesty and good character was vouched for by substantial and credible testimony. Nevertheless, the court, relying upon evidence other than that of a record developed upon remand, found the appellant's actions to be

---

1. W.Va. Code § 18A–2–8 (1977 Replacement Vol.) provides:

Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, but the charges shall be stated in writing and the employee so affected shall be given an opportunity to be heard by the board upon not less than ten days' written notice, which charges and notice shall be served upon the employee within five days of the presentation of the charges to the board. The hearing may be held at the next regular meeting of the board or at a special meeting called for that purpose; and in any case when the board is not unanimous in its decision to suspend or dismiss, the person so suspended or dismissed shall have the right of appeal to the state superintendent of schools.

intentional and ratified its previous ruling upholding the appellant's dismissal.

The evidence which the judge recited in support of his finding was drawn from the record previously adjudged unclear by this Court in *DeVito I*. A second review of the record does not sustain the trial court's finding on the issue of intent. The appellant offered a reasonable, rational, and credible explanation for her actions. She admitted that she had made a mistake, but steadfastly maintained that it was an unintentional mistake. The record establishes one incident of negligence appearing as a blemish on a record of eighteen years of satisfactory performance.

It appears from the record that the lower court was confused with respect to the law applicable to the Board's action in dismissing the appellant. The trial court states in its memorandum opinion that even if the appellant had accidentally distributed the objectionable materials, dismissal would be an appropriate sanction. However, the Board in this case dismissed the appellant for *wilful* neglect of duty, not for simple negligence, which is not a just cause for dismissal contained in W.Va.Code § 18A–2–8.[2] It appears from the record that the proceedings below on remand represent but a pedestrian procedural compliance with our decision in *DeVito v. Board of Education of Marion County, supra,* and that the trial court improperly relied upon the dissenting opinion to *Beverlin v. Board of Education of Lewis County, supra,* as basis for its decision.

■ We hold that the Board exercised its authority arbitrarily and capriciously rather than reasonably when it dismissed the appellant. The record shows that the appellant has been a victim of prejudice. She has not received a just determination on the issue of intent because of the nature of the material she distributed. The evidence discloses that the appellant was negligent, but it does not support a finding of wilful neglect of duty. The authority of the Board to discipline a teacher for negligence in the performance of a teacher's duties, pursuant to W.Va.Code § 18A–2–8, is not in dispute. The Board may not, however, discharge a teacher whose conduct is revealed by the record to lack the statutorily required element of willfulness for wilful neglect of duty.

Despite the inappropriateness of the sanction imposed in this case given the absence of intentional misconduct, the appellant's failure to exercise reasonable care in the performance of her duties does warrant some disciplinary action. The appellant admitted that she generally reviewed all materials given to her students prior to their distribution. Because she decided to use the materials in question on the spur of the moment, however, she failed to follow her past practice. She conceded that this failure was a "stupid mistake;" that she was "shocked," "ashamed," and "very embarrassed" when she discovered the content of the materials distributed; and that "it shouldn't have happened." Therefore, some measure of discipline was appropriate.

We must therefore order the appellant's reinstatement with back pay from March 6, 1980. We note that she was suspended without pay on June 6, 1979, and hold that a nine month suspension is an adequate disciplinary penalty for her negligence in failing to review materials distributed to her students.

Reversed and remanded for the entry of a proper order consistent with this opinion.

NEELY, Justice, dissenting:

Today's decision punishes a school board for attempting to protect the students that it was chosen to serve from a teacher who presented eighth graders with pornography and justified that action by saying that she hoped it would draw attention to herself. In straining to reach this incredible result, the majority opinion misstates the facts in the record, inaccurately characterizes our prior ruling, and ignores both the proper level of review in this case and the clear statutory language that applies to teacher dismissals. Because I find this result dis-

2. *See* note 1, *supra.*

turbing and because I find the opinion itself to be disingenuous, I must dissent.

Although it is understandable that the majority would gloss over the facts surrounding the "blemish" on appellant's record,[1] I believe the error of today's holding can be fully understood only by grasping the gravity of appellant's actions. The appellant was an art teacher and in that capacity was expected to instruct the thirteen and fourteen-year-olds entrusted to her both in the technical skills of drawing and in developing some rudimentary aesthetic sensitivity. The appellant's response to this challenging and critical role was to distribute to her class a cartoon—"Fritz the Cat"—that can be described only as pornographic.[2] When the principal of the school entered petitioner's classroom, which had become very disorderly, he began to collect the offensive materials. The petitioner said that she thought leaving the cartoons with the students would make the best of a bad situation.

The petitioner later contended that the material was distributed inadvertently. She testified that although she had purchased the book containing the cartoons in January and had not distributed the materials until May she had never examined the materials contained in the book. Petitioner claimed that she believed the cartoons were harmless and suitable for children. This claim that the petitioner handed out materials to impressionable youths without ever examining them to see whether they were appropriate when the covering sheet to the materials stated clearly, "Please be advised that you *must* be an Adult (usually at least eighteen years of age) to purchase any of these publications and there may be some local restrictions, perhaps based on past prosecutions which may make certain titles unmailable to your locale" constitutes the petitioner's *defense* in this action.

The Board of Education of Marion County dismissed the petitioner on the grounds of willful neglect of duty. The Circuit

1. The majority opinion states, "The record establishes one incident of negligence appearing as a blemish on a record of eighteen years of satisfactory performance." If by "satisfactory" the majority means that the petitioner had not previously been fired, they are of course correct. If, however, they intend to imply that petitioner's record was in any way exemplary or even acceptable prior to this troubling incident, that statement is yet another example of the majority's ignorance or "wilful neglect" regarding the record in this case. Petitioner's personnel file indicates that she had been involved in one incident in which a student had been paddled severely, leaving bruises and bringing blood. The file also indicates that petitioner was not forthcoming with an explanation of this matter when a superior requested it.

Even more troubling are the evaluations in the file by four administrators of secondary schools in Marion County. The first administrator stated that Mrs. DeVito had less control over her classroom than any other teacher he employed and that she frequently needed to seek assistance from others in bringing order into her class. The second administrator was equally frank and stated that it was his opinion that petitioner did not belong in the classroom as a teacher. He reported that materials were regularly stolen from her classroom and that her students were often found wandering the halls when they were supposed to be under her supervision. Similarly, the third administrator characterized the petitioner as a "non-teacher" and itemized seventeen specific problems; among them, lack of organization, lack of discipline, destruction of school equipment and furniture, and a tendency to ignore teacher problems. A fourth evaluation also listed numerous specific incidents in which the petitioner was unable to handle herself professionally, noted that noise from her classroom could be heard throughout the building and that other teachers had complained about her inability to control her class. In short, it is clear from the record that although Mrs. DeVito may have known the subject matter that she was responsible for teaching, she was incapable of effectively presenting it to students and could not even keep her classroom under some semblance of control.

2. The record does not contain copies of sufficient quality to allow for reproduction, and although individual panels would capture some of the cartoon's offensiveness, they would not convey adequately the strip's sordid tone. "Fritz the Cat" is unfit for children not only because it explicitly depicts sexual organs and acts and makes extensive use of vulgar language—although these are serious shortcomings in educational material. The real problem with this cartoon is its cynical and brutal tone. In reading through it, one gets the sense that drugs are a necessary corollary to sex, that the brutalization of women is amusing, and that Orientals are a deranged and demonic race. The advocate of progressive sexual education has nothing in common with the purveyor of these lurid and mean-spirited "comics."

Court of Marion County held that this dismissal was legal and justifiable and made specific findings that petitioner's dismissal had been in accordance with the statutory procedural requirements and that the Board's action was neither arbitrary nor ^apricious. The circuit court's Memorandum Opinion also contained precatory observations that in future cases the Board should make a greater effort to approach such matters with complete impartiality.

The case was subsequently appealed to this Court. In *De Vito v. Board of Education*, 169 W.Va. 53, 285 S.E.2d 411 (1981), (*De Vito I*) we noted the circuit court's concern with the impartiality of the Board's ruling and also stated that a specific finding on the intent of the petitioner was necessary in order to justify dismissal. Accordingly, we remanded the case to the circuit court with instructions to make a specific finding on that issue.

The majority opinion claims that in *De Vito I* we held that the record was insufficient to support a finding of willful neglect of duty. In fact, we held nothing of the kind. Our ruling in *De Vito I* was simply that the trial court had not made a specific finding of fact regarding petitioner's intent. We did not hold, and based on the voluminous evidence of intent that was present at the time of our ruling in *De Vito I*, could not hold, that a finding of intentional misconduct was unsupported by the facts of the case.

A brief examination of some of the testimony elicited at the Board of Education hearing on 22 June 1979 shows that there was a veritable mountain of evidence supporting a finding of intentional conduct on the part of petitioner. Two of the petitioner's superiors testified that when they met with petitioner about the incident she testified that she knew what was in the magazine and believed students should be exposed to this sort of thing earlier rather than later in life so that they could handle it better. She further stated that on the day she distributed the material she was very upset because she had not received a promotion to a job as an art teacher at the senior high school, no longer wanted to teach in a junior high school and had distributed the materials because, "When you do something good nobody pays attention to you. So when you do something like this, people pay attention to you." In fact, when the principal entered the classroom during the incident, petitioner immediately told him that the students had been informed not to read the captions to the material. It is certainly at least reasonable to infer from that statement that the petitioner had some knowledge of the lascivious nature of those captions.

The petitioner later testified that some of her statements had been an attempt to "make a good situation out of a bad situation." Like the court below, I must confess to some uncertainty as to exactly what petitioner means. If her claim is that the inculpatory statements were made in an effort to camouflage her incompetence in failing to review material, I do not find such an argument an effective defense. It would seem that petitioner is claiming that at first blush she believed she could best protect her job by claiming that she did intend to distribute pornographic materials. When she realized that her best defense lay in claiming she had no idea of what she was distributing, she did not hesitate in changing her story.

On numerous occasions, the petitioner stated that she would not have passed out the material if she had known that doing so would lead to dismissal. How does one intentionally avoid an inadvertent act? It is also noteworthy that petitioner's contrition resulted from her own plight and not from the impact of her deed on impressionable youths. That sort of cavalier approach to truth and to basic principles of right and wrong is itself a rather disturbing trait in someone who is to be held up to the youth of our community as a role model.

The majority opinion makes much of the fact that the school board did not introduce any additional evidence at the hearing held by the circuit court on remand. In light of the evidence that already existed, I do not believe that this barred the circuit court from finding petitioner's action to be inten-

tional. Although the majority claims that the trial court improperly relied on evidence that was not part of the record on remand, in fact all parties agreed to incorporate the prior hearings. Indeed, counsel for the petitioner agreed that in view of the lapse of time, additional testimony from the petitioner's superiors would be less clear than their original recollections. Furthermore, the majority opinion is plainly inaccurate in claiming that all of the evidence presented at the hearing on remand was exculpatory in nature.

The cross-examination of the petitioner elicited yet more evidence that creates a strong inference that her actions were intentional. For example, petitioner testified that she purchased the "Fritz the Cat" book at the same time she purchased three other volumes. She also testified that she examined all three of the other books, but chose not ever to look at the "Fritz the Cat" volume which she held for approximately five months before coincidentally passing it out to students on the day she was denied a promotion. The cross-examination also pointed out that despite petitioner's claim that she never looked at the pages that she handed out to the students, she did not hand out pages that were consecutively numbered. It certainly strains credulity to believe that petitioner randomly ripped out every third page of the book without ever looking at the contents of those pages. Even petitioner's direct testimony calls her credibility into question. She stated that the "Fritz the Cat" material was intended for poor artists who could not handle the normal assignment. If the petitioner had not reviewed the cartoons, how did she know they were suitable for remedial use?

Apparently, the majority does not find all of this evidence convincing on the issue of intent. With all due respect to that viewpoint, however, it should hardly be necessary to point out yet again that the issue in this case is not whether this Court agrees with the determinations of the lower court and the school board. In *Beverlin v. Board of Education of Lewis County*, 158 W.Va. 1067, 216 S.E.2d 554, 557 (1975), this court stated that: "In determining whether the circuit court erred in affirming the Board's dismissal of [the teacher], the sole significant issue is whether [the school board] acted arbitrarily and capriciously in suspending and dismissing [the teacher], considering the evidence placed in the record." Similarly in *Fox v. Board of Education of Doddridge County*, 160 W.Va. 668, 236 S.E.2d 243 (1977), the court stated: "This Court does not sit a a [sic] super-Board of Education. We do not substitute our judgment for that of the school authorities ...."

One need not agree with the lower court's evaluation of the evidence to recognize that the court's action was sufficiently grounded in the record to overcome a finding of arbitrariness or capriciousness. Yet it is worth noting that this court, in its benign wisdom, has not seen fit to uphold such a dismissal in over a decade. If all of our teachers are exemplary, it is surprising that this court has found our educational system wanting. *See, Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979). If all of the hearings were flawed, it is apparent that our own procedural guidance has been inadequate. What seems more likely, however, is that we have failed to follow our own standard. In short, if one is looking for arbitrary and capricious review, it is not necessary to look far.

Finally, I would submit that it is the majority opinion and not the ruling of the court below that evinces confusion with regard to the applicable law in this case. *W.Va. Code* 18A–2–8 [1969] states in relevant part, "A board may suspend or dismiss any person in its employment at any time for: immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, ...." It is at least arguable that petitioner's conduct in this case can be categorized as immoral, incompetent, intemperate and willfully neglectful. Certainly, the majority cannot be correct in stating that no teacher can be removed unless her actions are intentional. Incompetence is rarely intentional. In fact, it is best understood as a form of negligence.

The circuit court's memorandum opinion did not, as the majority opinion suggests,

claim that dismissal would be warranted for negligence when the charge was willful misconduct. As an aside, the circuit court simply noted its disagreement with this court's pronouncement that only intentional acts could lead to dismissal. As I have already pointed out, the fact that the statute explicitly lists incompetence as grounds for dismissal would seem to support this conclusion. Furthermore, the circuit court would also have been correct in pointing out that the distribution of pornographic material need not be willful so long as the petitioner did willfully distribute material which she had neglected to review.

If petitioner did not review class materials, that act of omission is itself a wilful neglect of duty. The petitioner does not claim she was unaware of her responsibility to prepare for class, but claims she chose not to do so. In handing out material she had not reviewed, she wilfully neglected a known professional obligation. To say that she did not specifically intend to distribute smut is not an answer. One who drives recklessly is deemed to intend the natural consequences of the act. Similarly, one who teaches recklessly must accept responsibility for the consequences of this wilful act of omission. A teacher who failed to show up for a class would not intend that the students would engage in violence; but if he intended to be inexcusably absent he would have wilfully neglected a duty.

In *Fox v. Board of Education of Doddridge County*, 160 W.Va. 668, 236 S.E.2d 243 (1977) we stated that, "We may envision a single act of malfeasance, whereby severe consequences are generated, that merits a dismissal." Thus, although that case did not attempt to form a comprehensive definition of willful neglect of duty, it did indicate that the touchstone of such a definition was the harmfulness of the particular activity. If the gravamen of today's ruling is that the distribution of lascivious material to minors is an insignificant breach of professional conduct by an educator, the opinion is not only legally indefensible; it flies in the face of common sense and decency.

The majority opinion goes on to say that the appellant is a "victim of prejudice" and has not received a fair hearing because of the content of the material she distributed. I must confess to some bewilderment. If the majority's point is that the appellant was dismissed because the content of the material she distributed was pornographic, they are quite correct. Distribution of the Dr. Seus classic, *The Cat in the Hat Comes Back* would not have warranted dismissal. I fail to see, however, how this constitutes prejudice. Is it narrow-minded to view the distribution of inappropriate material in a different way than one would view the distribution of appropriate material? A decision upholding dismissal of the petitioner would be discriminating in the sense that it would draw an intelligent line between different situations; it would in no sense of the word be discriminatory. Certainly there is nothing in the record to indicate that either the Board or the circuit court was influenced by any sexual, religious or ethnic characteristic of the petitioner, and any insinuation to the contrary is both unfair to those democratically elected public servants and unworthy of this Court.

Attendance at the public schools for children of junior high school age is mandatory. But under today's ruling a parent concerned for the moral welfare of his children will send them to the public schools at his own peril. The appellant in this case is a state-mandated authority figure whom children are encouraged to respect. If courts will not allow communities to remove teachers who expose their children to filth and vice we have no one but ourselves to blame if West Virginia education is something less than "thorough and efficient." *West Virginia Constitution*, Art. XII, section 1.

In *Golden v. Board of Education*, 169 W.Va. 63, 285 S.E.2d 665 (1981), we reinstated a teacher recently convicted of larceny—a crime of moral turpitude—as a *guidance counselor*. Today, we reinstate a purveyor of pornography as an art teacher—a position in which she is an arbiter of taste for our youth. No Botticelli's *Venus* or Michaelangelo's *David* for us; give our children "Fritz the Cat" every time. As I said in my dissent in *Golden, supra* at 670:

"The Board went to a great deal of expense and trouble to rid its school system of the appellant. The people who suffer most from this court's largess, as always, are the children and parents. Children and parents must work not only against the pernicious influences of drug dealers, other children already engaged in crime, and a host of underworld characters who profit from juvenile vice, but also they must now work against the example of the public schools themselves."

Today's decision is yet another example of placing the interests of teachers above the interests of children. After all, children do not vote. It is a case in which we have bent the law, ignored the facts and in other ways wreaked havoc with the means of justice in order to reach an end which is not simply questionable but perverse. Furthermore, the majority opinion is not content to play fast and loose with external legal realities. It does not even maintain internal consistency.

The majority opinion states that it is beyond question that the school board can punish the appellant in some manner short of dismissal for her act of gross negligence; but it does not recognize the blatant abuse of power inherent in this court's determination of what the appropriate penalty will be. This is particularly galling when the "sanction" imposed by the majority consists of giving the petitioner nearly four years back pay. The majority was not elected to the Marion County Board of Education. They do not have to justify this action to outraged parents who will elect Marion County's next school board and who may hold the current board responsible for retaining a teacher that Board tried to remove. Nor must the majority deal with the additional financial burden on the Board's limited budget that results from paying nearly $60,000 to a bad teacher who did not even work for the time in question. Amidst the many absurdities to be found in today's decision, this last point may seem a rather trivial quibble but one cannot help but look to the announcement effects of today's decision.

Not only are we telling teachers that they do not stand in danger of losing their jobs for exposing children to immorality, we are telling school boards that we have every intention of punishing them by usurping their statutory responsibilities and worsening their budgetary constraints if they attempt to maintain some minimal standard of morality in their community. If locally elected school boards disagree with this court's views on how schools should be run, those boards and their constituencies are wrong and we will set them right. We are telling circuit judges that although their review of school board findings is to be limited to a determination of whether the Board's decision was arbitrary and capricious, our own review of the circuit court decision will be guided only by a subjective determination of which statements on a printed page we choose to believe. If experienced trial judges who have had an opportunity to see the demeanor of witnesses reach a decision the majority dislikes, those trial judges are wrong. In fact, they are "arbitrary and capricious!"

Today's ruling is without principle or vision. It is another intrusion on the rights of communities and parents to protect their children from untoward influences. It makes it harder for professional educators to take seriously their responsibilities to improve the futures of our young and places greater value on a teacher's job security than on a child's potential and values. As a matter of law, a matter of policy and a matter of ethics, it is simply wrong.