358 S.E.2d 798

**WEST VIRGINIA DEPARTMENT OF HEALTH**

v.

**WEST VIRGINIA CIVIL SERVICE COMMISSION and Donna Jean Adkins.**

**No. 17503.**

Supreme Court of Appeals of West Virginia.

June 11, 1987.

Silas B. Taylor, Deputy Atty. Gen., Barbara Fiedler, Asst. Atty. Gen., for appellant.

Robert S. Baker, APALRED, Beckley, for appellees.

BROTHERTON, Justice:

This is an appeal by Donna Jean Adkins from an order of the Circuit Court of Kana-

238

wha County which reversed a partially favorable and partially adverse decision of the Civil Service Commission. The Commission had found that Adkins had falsely and maliciously taken out a misdemeanor battery warrant against the administrator of Pinecrest State Hospital and ruled that Pinecrest had cause to discipline Adkins, but reversed a decision by Pinecrest terminating her. The Commission reinstated Adkins after a one-year absence from work, without back pay, and placed her on an additional disciplinary probation. The Department of Health appealed this decision to the Circuit Court of Kanawha County, who reversed the Commission, holding that Adkins' termination was proper. Adkins is still working at Pinecrest pursuant to a stay issued by the Circuit Court of Kanawha County, and continued by this Court, to maintain the status quo during the pendency of the appeal to this Court.

Donna Adkins was fired from her position as a nurse's assistant on April 15, 1985. In a letter from Jerri L. Hartsock, the Assistant Administrator of Pinecrest Hospital, three reasons were stated for the termination. First, an incident occurred where Adkins falsely accused Hospital Administrator Kyle Baker of slapping her, filed a criminal charge against him, and made statements to the newspapers and television stations concerning this false accusation. Second, she was involved in an underground newspaper known as the "Pinecrest Picker." Third, she sent a petition to United States Senator Robert Byrd, asking that Kyle Baker be removed as administrator of Pinecrest Hospital, which allegedly contained signatures of three Pinecrest Hospital employees who have denied signing the petition. By agreement between the parties, the second two reasons were dropped from consideration, leaving as the only issue the false accusation and criminal charge.

Testimony before the Commission showed that prior to February 4, 1985, Adkins had requested educational leave so that she could attend a class at Beckley College, located approximately one mile from Pinecrest Hospital. This class began in January, 1985, and was to meet three days a week, from 8:00 a.m. to approximately 9:00 a.m. Adkins was given approval to take leave time to attend this class on the condition that she report for work at Pinecrest in time to commence work at the beginning of her 7:00 a.m. shift. Following her reporting to and commencing work, she was allowed to leave to attend class at Beckley College. She would leave work at approximately 7:30 a.m. Following her class, Adkins was required to return to Pinecrest Hospital to complete the remaining portion of her shift and would work from approximately 9:00 a.m. to 3:00 p.m. Adkins was not satisfied with this arrangement, and requested that she not be required to report to work until after her class ended at 9:00 a.m. Adkins was informed that her request would have to be approved by the Educational Leave Committee at Pinecrest. This response was unsatisfactory to Adkins, and she decided to obtain the forms to institute a grievance proceeding. However, when she went to the personnel office at 3:00 p.m. on February 4, 1985, the door was locked.

The hospital administrator, Kyle Baker, noticed Adkins waiting outside the locked office and inquired whether he might be of assistance. She told him she would like to have a grievance form. Baker told her than he would obtain one for her from the personnel office, and did so. While this was going on, the two entered into a discussion about Adkins' educational leave time. The discussion deteriorated into an argument, with Adkins quite excited and yelling, and Baker outwardly calmer, but talking in a loud voice, attempting to interject his thoughts into Adkins' continuous stream of words. Somewhere during the argument, Adkins claimed that Baker struck her with an open hand on the left cheek. Baker strenuously denied slapping Adkins.

Shortly after the alleged striking, Jerri Hartsock, the assistant administrator, returned to the administrative office area of Pinecrest Hospital. She noticed Baker and Adkins in the personnel office and entered the office, where she saw Mr. Baker behind a desk, approximately fifteen feet away

from Adkins, who was located in the doorway. Hartsock testified that she heard no undue commotion prior to or during her time in the personnel office, and she saw no red mark on Adkins' face, and that Adkins was not crying. She did say, however, that Adkins was being smug and flippant, as if she was trying to provoke and aggravate Baker.

While no witness viewed the entire incident except Baker and Adkins, other people in the administrative office area who had a chance to see and hear bits and pieces of the argument noted that, other than loud voices, nothing unusual happened. Shortly after the incident, Adkins told Pearl Adkins (no relation) that she had been fighting with Baker and later asked Garnet Goodwin what she would do if a man slapped her, and finally told Ruth Yarrow that Baker had hit her.

Adkins filed criminal charges against Baker and made television and newspaper appearances accusing him. Baker was later found innocent, and Adkins was fired, leading to these proceedings.

■ We reverse the decision of the circuit court because it did not pay due deference to the decision of the Civil Service Commission. West Virginia Code § 29–6–15 (1986) provides, in part: "If the commission finds that the action complained of and taken by the appointing authority was too severe but was with good cause, the commission may provide for such other remedy or remedies, as may be deemed appropriate and in the best interest of the parties. The commission shall expressly have the authority by order to provide for such remedies as it may deem to be appropriate after it has made a complete review of the circumstances of each individual case...." Thus, it is the province of the Commission, not the courts, to set the punishment.

■ The Civil Service Commission set the punishment at a year's suspension.

This Court will not reverse a finding of the Civil Service Commission unless it is clearly wrong. *See* Syllabus, *Billings v. Civil Service Comm'n*, 154 W.Va. 688, 178 S.E.2d 801 (1971). We cannot say that the Commission was clearly wrong in reducing the termination to a year's suspension. While Adkins' false accusation was quite reprehensible, a year's suspension is also a reasonably severe punishment.

The State argued forcefully that the Commission only "reluctantly" reduced the dismissal to a lesser sanction because of what it felt was this Court's guidance in *Blake v. W.Va. Civil Service Comm'n*, 172 W.Va. 711, 310 S.E.2d 472 (1983), and *Serreno v. W. Va. Civil Service Comm'n*, 169 W.Va. 111, 285 S.E.2d 899 (1982). These cases held that, as a matter of law, petty misappropriations of State property, while worthy of discipline, did not constitute "good cause for dismissal" of long-time, civil service tenured employees with unblemished records. After a discussion of these cases, the Commission noted: "We reluctantly conclude from the guidance of these cases that the dismissal of Ms. Adkins is too severe a penalty." We make no decision today as to whether the Commission was correct or incorrect in its assertion as to how this Court would have ruled. The decision of the Commission was supported by evidence and not clearly wrong. We, therefore, affirm it, reversing the decision of the Circuit Court of Kanawha County. However, we add as a note to the Civil Service Commission that, absent clear guidance from this Court, they should let their own opinion rule their decisions. We pay deference to the decisions of the Commission and would prefer a clear statement of opinion instead of one muddied by words of hesitation. If we disagree with the result, we will let the Commission know.

Other arguments presented by Adkins were meritless, and we dismiss them summarily.[1] Adkins will receive no back pay

1. Adkins claimed that many of the findings of fact made by the Civil Service Commission are not supported by substantial evidence in the record in this case. The findings of fact which may not have been supported in the record were few and mostly trivial. The inaccuracies contested by the appellant mostly concerned how the Commission characterized the evidence, and not that it was wrong about the evidence. Adkins admits that there was substantial evidence in the record to support the Commission's finding that Baker did not slap her. "[F]indings of

for her year's suspension, and each party will be responsible for their own attorney's fees.

For the reasons stated above, the decision of the Circuit Court of Kanawha County is reversed.

Reversed.

fact made by the Commission will not be reversed by this court unless they are clearly wrong." *W. Va. Dept. of Corrections v. LeMasters,* 173 W.Va. 159, 313 S.E.2d 436, 439 (1984).

A further contention by Adkins was that the circuit court erred by failing to hold that the Civil Service Commission made many erroneous rulings concerning the admission of evidence in the administrative hearing and through excluding portions of the evidence from the record. The Commission relied on inconsistencies between Adkins' statement given to the State Police and her statement made at trial. The trial counsel forgot to admit the statement before the West Virginia State Police, and therefore it never officially made it into evidence, despite being marked as an exhibit and used extensively during the trial. No objection was ever made that the exhibit was not moved into evidence. Other complaints about evidentiary rulings were either incorrect or obviously harmless.

Adkins also claimed the circuit court erred by failing to find that any adverse impact fell upon Pinecrest Hospital as a result of the off-premises wrongdoing. There was a considerable waste of State funds and employee time in having the administrator of the hospital and numerous witnesses testify before the Commission. No one can seriously claim that trying to jail the administrator of a State hospital does not have an adverse impact on the hospital.

Finally, we find the first amendment claims presented by Adkins to be meritless.