549 S.E.2d 294

George TRIMBLE, Petitioner Below, Appellant,

v.

**WEST VIRGINIA BOARD OF DIRECTORS,** Southern West Virginia Community and Technical College, Respondent Below, Appellee.

No. 28490.

Supreme Court of Appeals of West Virginia.

Submitted March 6, 2001.

Decided April 6, 2001.

Dissenting Opinion of Justice Maynard July 6, 2001.

C. Jane Moran, Law Offices of C. Jane Moran, Williamson, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Connie A. Bowling, Senior Assistant Attorney General, Charleston, Bruce Ray Walker, General Counsel, Charleston, for the Appellee.

DAVIS, Justice.

George Trimble, appellant/petitioner below (hereinafter referred to as "Mr. Trimble"), appeals from a final order of the Circuit Court of Kanawha County affirming the deci-

sion of the Board of Directors of the West Virginia State College System (hereinafter referred to as "the Board")[1] to dismiss Mr. Trimble from his position as a tenured, full-time assistant professor of English at the Southern West Virginia Community and Technical College, appellee/respondent below (hereinafter referred to as "the College"). Mr. Trimble was terminated for alleged insubordination. Here, Mr. Trimble contends that his termination violated his First Amendment rights to freedom of speech and assembly. Mr. Trimble also contends that he had a property interest in his employment and that because of his property interest, the College was required to utilize progressive disciplinary measures prior to considering termination of his employment. After reviewing the entire record, and the briefs and argument of counsel, the final order of the circuit court is reversed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Trimble began his employment with the College as an Instructor in the Fall of 1978.[2] He was awarded tenure and promoted to the position of assistant professor in 1984. During his employment with the College, Mr. Trimble taught Literature and English in the College's Humanities Division. Prior to 1996, Mr. Trimble engaged in no conduct that required disciplinary action against him. In fact, Mr. Trimble consistently received favorable evaluations throughout his employment with the College.

Problems began to occur in 1996. In January of 1996, the College faculty unanimously voted a vote of no confidence for the College President, Travis Kirkland. The no confidence vote was prompted by numerous

changes Mr. Kirkland attempted to institute at the College. Additionally, in August 1996, Mr. Trimble was instrumental in organizing WVEA/Southern (hereinafter referred to as "WVEA"), a teacher's labor organization. Mr. Trimble became President of the organization, which a majority of the College's faculty eventually joined. In fact, WVEA was extremely critical of many policy initiatives proposed by the College.

One of the changes sought by President Kirkland was the implementation of an assessment plan known as Instructional Performance Systems Incorporated (hereinafter referred to as "IPSI"). IPSI was a computer software program used for writing course syllabi. It was designed to allow for measuring competency-based goals which could be later used to evaluate student achievement. The College faculty was first advised of the assessment plan in a memorandum issued in August 1996. A few months later, President Kirkland mandated the use of the IPSI software. President Kirkland's decision was met with faculty opposition.

The Humanities Division objected to using IPSI. The position taken by the Humanities Division was that IPSI was impractical and unworkable for their courses, although it might have relevancy for technical or vocational programs offered by the College. Therefore, Mr. Trimble opposed the use of IPSI on the grounds that it interfered with the principles of academic freedom. The position taken by Mr. Trimble was printed in a newsletter published by WVEA.

Several informational meetings were conducted by the College concerning the use of the IPSI software on the Williamson campus. Mr. Trimble failed to attend several of the meetings.[3] The College sent a memo to Mr. Trimble advising him of institutional policy

---

1. The Board ceased to exist on July 1, 2000, pursuant to W. Va.Code §§ 18B–2–1(e) & 18B–3–1(e) (2000) (Supp.2000). The Legislature replaced the Board with the West Virginia Higher Education Policy Commission. *See* W. Va.Code § 18B–1B–1, *et seq.* Additionally, on July 1, 2001, an Institutional Board of Governors for each higher education institution will come into existence. *See* W. Va.Code § 18B–2A–1, *et seq.*

2. The College is composed of four branches located in Mingo, Logan, Boone and Wyoming counties. Mr. Trimble taught at the Mingo County campus located in Williamson.

3. Mr. Trimble attended a meeting held on February 5, 1997. A meeting was held on March 5, 1997, but Mr. Trimble only attended the morning session thereof. Meetings that Mr. Trimble did not attend occurred on November 21, 1996; December 6, 1996; April 16, 1997 and May 7, 1997.

mandating advanced written notice of non-emergency reasons for not attending required College meetings. Mr. Trimble was further advised that "[c]ontinued non-attendance and disregard for these required meetings will result in a letter of reprimand being placed in your personnel file with additional action as needed."

As a result of opposition to the IPSI software by members of the Humanities Division, President Kirkland ordered every faculty member of the Humanities Division to prepare an IPSI-generated syllabus for a specific course by a certain deadline. Subsequently, Mr. Trimble and two other members of the Humanities Division filed a grievance challenging the mandatory use of the IPSI software.

The College advised Mr. Trimble in a memo dated March 17, 1997, that his resistance to the College's efforts to require the faculty to draft IPSI syllabi was being viewed as a "flagrant and willful disregard for directions and/or inquiries of your employer" which constitutes "insubordination". Mr. Trimble responded with a memo disputing the characterization of his actions as "insubordination".

During a Humanities Division meeting in April, 1997, Mr. Trimble and another faculty member indicated that they refused to complete a syllabus using the IPSI format pending resolution of their grievance.[4] On April 14, 1997, Mr. Trimble received a letter directing him to appear in a vacant office on the College's Logan Campus at 9:00 a.m. on Wednesday, April 16, 1997, to complete a draft IPSI syllabus. Mr. Trimble failed to appear at the Logan campus on April 16, 1997.

By letter dated May 12, 1997, President Kirkland advised Mr. Trimble of the College's intention to terminate his employment, effective May 30, 1997, for insubordination. Mr. Trimble was offered the opportunity to meet with President Kirkland to rebut the charges. He never requested a meeting. Accordingly, by letter dated May 30, 1997,

Mr. Trimble's employment with the College was terminated.[5]

Mr. Trimble filed a grievance challenging his termination. An Institutional Hearing Committee (hereinafter referred to as "IHC") conducted evidentiary hearings on September 2 and 3, 1997. On September 22, 1997, IHC issued a letter decision in favor of Mr. Trimble, concluding that there was no proof that he was insubordinate. However, President Kirkland subsequently made his own findings and upheld Mr. Trimble's termination. Mr. Trimble appealed President Kirkland's decision to the Board. A hearing examiner was appointed to conduct evidentiary hearings.

The hearing examiner issued a decision on November 18, 1998, recommending that the termination decision be upheld. The Board adopted the recommendation on January 26, 1999. Mr. Trimble then filed an appeal with the Circuit Court of Kanawha County. The circuit court affirmed the Board's decision on August 2, 2000. It is from the circuit court's ruling that Mr. Trimble now appeals.

## II.

### STANDARD OF REVIEW

■ This matter arises from an administrative grievance under 10 W. Va. CSR § 131–36–1, et seq. and W. Va.Code § 29A–5–1, et seq. As such, we have held that:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory

4. The grievance was eventually denied.

5. In May of 1997, Mr. Trimble received his annual evaluation report. This evaluation rated Mr.

Trimble's performance as "Good" for the 1996–1997 school year.

authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't. v. State ex rel. State Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983). *Accord* Syl. pt. 1, *Modi v. West Virginia Bd. of Med.*, 195 W.Va. 230, 465 S.E.2d 230 (1995). We have also stated that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. pt. 1, *Francis O. Day Co. v. Director, Div. of Envtl. Prot.*, 191 W.Va. 134, 443 S.E.2d 602 (1994). The clearly erroneous

> standard does not entitle a reviewing court to reverse the finder of fact simply because it may have decided the case differently.... Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently[.]

*Board of Educ. of County of Mercer v. Wirt*, 192 W.Va. 568, 578–79, 453 S.E.2d 402, 412–13 (1994) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985)) (footnotes omitted).

## III.

## DISCUSSION

### A. First Amendment Claim

Mr. Trimble makes two arguments regarding the claim that his termination violated his rights to free speech and assembly,[6] as guaranteed under the First Amendment of the United States Constitution.[7] First, Mr. Trimble asserts that he was fired because of his union activities in establishing a branch of WVEA at the College. Therefore, he argues, the First Amendment protected him from being fired for such activities. Second, he contends that his refusal to cooperate with implementing the IPSI program was a protest affecting the education of his students. Likewise, he contends the First Amendment protected him from being fired for such protest. The circuit court and hearing examiner concluded that Mr. Trimble failed to prove that his termination was due to the exercise of First Amendment freedoms.[8]

■ We have acknowledged that "the 'constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state.'" *Riesbeck Food Mkts., Inc. v. United Food & Commercial Workers, Local Union 23*, 185 W.Va. 12, 16 n. 11, 404 S.E.2d 404, 408 n. 11 (1991) (quoting *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196, 202 (1976)). This Court has recognized that "public employees are entitled to be protected from firings, demotions and other adverse employ-

---

6. Mr. Trimble makes a colorable argument regarding the free speech claim, but does not provide any analyzable argument regarding the free assembly contention. Therefore, we will not address the free assembly contention. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing [which] are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citation omitted). *See also Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived."); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." (citation omitted)).

7. The First Amendment reads: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

8. The circuit court concluded that it did not believe "these constitutional issues exist in the case at bar". The hearing examiner found that "[t]he evidence, while suggesting that the Administration wasn't particularly pleased with union organizing efforts on or around the College grounds, did not demonstrate that the administration engaged in any untoward, pretextual or under-handed activities designed to result in the Grievant's termination."

ment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights." *Orr v. Crowder*, 173 W.Va. 335, 343, 315 S.E.2d 593, 601 (1983). There is no dispute in this case that the College is a public institution and is therefore subject to the restrictions of the First Amendment. We held in Syllabus point 4 of *Orr*, in part, that:

> [W]here the plaintiff claims that he was discharged for exercising his First Amendment right of free speech, the burden is initially upon the plaintiff to show: (1) that his conduct was constitutionally protected; and (2) that his conduct was a substantial or motivating factor for his discharge. His employer may defeat the claim by showing that the same decision would have been reached even in the absence of the protected conduct.

173 W.Va. 335, 315 S.E.2d 593.

■ *(1) Determining whether conduct was constitutionally protected.* Under the first prong of *Orr* we must determine whether Mr. Trimble's conduct was constitutionally protected. The United States Supreme Court has long held that public employees may not "be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public [institutions] in which they work." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968). Under this standard, Mr. Trimble had a constitutionally protected right to voice concerns he may have had regarding the impact of IPSI on his students.

■ Further, in *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), the United States Supreme Court recognized that public employees do enjoy some First Amendment rights regarding their organizational attempts. The *Smith* court stated "[t]he public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so." *Id.*, 441 U.S. at 465, 99 S.Ct. at 1828, 60 L.Ed.2d at 363 (citations omitted). Therefore, Mr. Trimble was clearly protected by the First Amendment in his peaceful ef-

forts to organize a branch of WVEA at the College.

■ The record in this case also clearly illustrates that Mr. Trimble refused to create an IPSI syllabus after being ordered to do so by the College. Mr. Trimble also failed to attend several meetings involving IPSI training. While Mr. Trimble may have deemed the latter conduct to be an expression of his protest to the use of the IPSI program, we do not believe that this conduct was protected by the First Amendment. We have recognized that "the right to free speech is not absolute." *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 143, 506 S.E.2d 578, 586 (1998). In *Orr* we similarly pointed out "that the State, as an employer, also has an interest in the efficient and orderly operation of its affairs that must be balanced with the public employees' right to free speech, which is not absolute." *Orr*, 173 W.Va. at 343–44, 315 S.E.2d at 601.

■ Here, the College believed that the IPSI program would help in evaluating its students. Whether the College was right or wrong is of no importance or significance to our ultimate conclusion in this case. The College had the exclusive responsibility in assessing the merits of the IPSI program. It required Mr. Trimble to attend training sessions involving the IPSI program and issued a lawful mandate requiring Mr. Trimble to use this software. Mr. Trimble cannot depend upon the First Amendment for refusing to attend the training sessions and for refusing to use the IPSI program. "Academic freedom is not a license for activity at variance with job related procedures and requirements, nor does it encompass activities which are internally destructive to the proper function of the university or disruptive to the education process." *Pickering v. Board of Educ.*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968).

*(2) Determining whether conduct was a substantial or motivating factor for the discharge.* Under the second prong of *Orr* we must decide whether Mr. Trimble's conduct was a substantial or motivating factor for his discharge. As we have pointed out, Mr. Trimble engaged in conduct that was protect-

ed by the First Amendment and other conduct that had no constitutional protection. The College contends that it fired Mr. Trimble because he was insubordinate in failing to attend several meetings and in refusing to create an IPSI syllabus. Mr. Trimble contends that, absent his constitutionally protected union activities, the College would not have terminated him for missing several meetings and refusing to create an IPSI syllabus.

■ In our review of the record in this case, we cannot say that Mr. Trimble proved that the substantial or motivating factor in his termination was his union activities. We agree with the hearing examiner's conclusion that "[t]he evidence, while suggesting that the Administration wasn't particularly pleased with union organizing efforts on or around the College's grounds, did not demonstrate that the administration engaged in any untoward, pretextual or under-handed activities designed to result in the Grievant's termination." We, therefore, find no First Amendment violation in the College's decision to terminate Mr. Trimble.[9]

### B. Property Interest In Employment

Next, Mr. Trimble contends that because he was a tenured assistant professor, he had a property interest in his employment. Further, he claims that because of the property interest, the College should not have fired him before resorting to other progressive disciplinary measures. We agree with Mr. Trimble on both issues.

■ We have held that "[t]he Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." Syl.

pt. 1, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977). Moreover, "[a]ny claim of entitlement to a constitutionally protected property interest is determined by state law." *State ex rel. Deputy Sheriff's Ass'n v. County Comm'n of Lewis County,* 180 W.Va. 420, 422, 376 S.E.2d 626, 628 (1988).[10] In *Clarke v. West Virginia Board of Regents,* 166 W.Va. 702, 709–10, 279 S.E.2d 169, 175 (1981), we recognized a constitutionally protected property interest exists in a tenured teaching position. *See* Syl. pt. 3, *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978) ("A teacher who has satisfied the objective eligibility standards for tenure adopted by a State college has a sufficient entitlement so that he cannot be denied tenure on the issue of his competency without some procedural due process."); Syl. pt. 4, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 ("A State civil service classified employee has a property interest arising out of the statutory entitlement to continued uninterrupted employment."). Indeed, it is well-settled, and we so hold, that a tenured teacher has a protected property interest in his/her position, which raises constitutional due process considerations when a teacher is faced with termination of his/her employment. W. Va. Const. art. III, § 10. *See Gilbert v. Homar,* 520 U.S. 924, 928, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120, 126 (1997); *Board of Regents of State Colls. v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972); *California Teachers Ass'n v. California,* 84 Cal.Rptr.2d 425, 20 Cal.4th 327, 975 P.2d 622 (1999); *Farner v. Idaho Falls Sch. Dist. No. 91,* 135 Idaho 337, 17 P.3d 281 (2000); *Smith v. Ouachita Parish Sch. Bd.,* 702 So.2d 727 (La.App.Ct.1997). We recog-

---

**9.** We must emphasize that the record in this case simply failed to provide a scintilla of evidence that would link Mr. Trimble's union activity with the decision to terminate him. To be clear, this Court will act with the utmost swiftness and dispatch to remedy unlawful governmental interference with First Amendment rights. However, we will not impose the full weight of our constitutional authority when the only evidence proffered is a lawyer's characterization of events without any evidence to support the claim.

**10.** This Court recently held in Syllabus point 6 of *State ex rel. Anstey v. Davis,* 203 W.Va. 538, 509 S.E.2d 579 (1998), that:

To have a property interest, an individual must demonstrate more than an abstract need or desire for it. He must instead have a legitimate claim of entitlement to it under state or federal law. Additionally, the protected property interest is present only when the individual has a reasonable expectation of entitlement deriving from the independent source.

nize that the purpose of tenure is to protect competent and worthy teachers against arbitrary dismissal and to promote conditions which will encourage their professional growth. It does not, however, confer upon teachers special privileges or immunities to interfere in the efficient operation of an educational institution. *See Baughman v. Unified Sch. Dist. No. 500,* 27 Kan.App.2d 888, 10 P.3d 21, 24 (2000). In the instant proceeding there is no dispute, and the circuit court so found, that Mr. Trimble's status as a tenured assistant professor gave him a constitutionally protected property interest in continued employment with the College.

The cases decided by this Court that implicated a constitutionally protected property interest in employment dealt primarily with giving adequate notice or holding an adequate hearing prior to taking some disciplinary action against the employee. *See Swiger v. Civil Serv. Comm'r,* 179 W.Va. 133, 365 S.E.2d 797 (1987); *Fraley v. Civil Serv. Comm'n,* 177 W.Va. 729, 356 S.E.2d 483 (1987); *Major v. DeFrench,* 169 W.Va. 241, 286 S.E.2d 688 (1982); *Clarke v. West Virginia Bd. of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981); *North v. West Virginia Bd. of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977); *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977); *Snyder v. Civil Serv. Comm'n,* 160 W.Va. 762, 238 S.E.2d 842 (1977). The issue of an adequate notice or hearing is not presented by the instant case. Instead, we are asked to determine whether Mr. Trimble's property interest in continued employment required the College to utilize progressive disciplinary measures before resorting to termination.

■ When an employee is determined to have a property interest in his or her employment, the extent of due process required is determined as follows:

The extent of due process protection affordable for a property interest requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of a property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[11]

Syl. pt. 5, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (footnote added). *See* Syl. pt. 5, *Major v. DeFrench,* 169 W.Va. 241, 286 S.E.2d 688. We are also reminded that "due process is a flexible concept which requires courts to balance competing interests in determining the protection to be accorded one facing a deprivation of rights." *Clarke v. West Virginia Bd. of Regents,* 166 W.Va. at 710, 279 S.E.2d at 175.

■ Constitutional due process protections are to be defined by the facts of a particular case. It is generally recognized that if it is determined that constitutional due process applies, "the question remains what process is due." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985) (internal quotation and citation omitted). Because of the "flexible" nature of due process, we believe, and accordingly hold, that constitutional due process principles may be used to determine whether disciplinary action taken by a public higher educational institution against a tenured teacher is too severe for the infraction occasioning such discipline.[12] W. Va. Const. art. III, § 10.

**11.** In Syllabus point 2 of *North v. West Virginia Bd. of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977), we held the following:

Applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the *West Virginia Constitution,* which are[:] First, the more valuable the right sought to be deprived,

the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation.

**12.** In the case of *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978), the employee had taught for six years in an institution which had policies that provided that an

Our decision in *Oakes v. West Virginia Department of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980), although involving civil service and not invoking constitutional principles, provides some guidance for our resolution of the instant case.[13] In *Oakes* the employee was terminated from his tenured civil service position as a postmaster for the state capitol post office. The employee was fired because he allegedly was negligent in failing to ensure two pieces of registered mail, containing bid proposals for financing the state's purchase of an airplane, were delivered before the closing deadline for such bid. We held that "good cause" was not shown to justify terminating the employee. In Syllabus point 1 of *Oakes* we stated, in part, that good cause "means misconduct of a substantial nature directly affecting the rights and interest of the public, rather than ... trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention."[14] 164 W.Va. 384, 264 S.E.2d 151. Our decision in Oakes was based in part upon the fact "that nothing in the record indicate[d] that Mr. Oakes had a prior history of negligent or inefficient conduct in his supervision of the Capitol Post Office, nor that he had received any reprimands or been subjected

to any disciplinary proceedings."[15] *Oakes,* 164 W.Va. at 386, 264 S.E.2d at 153. *See West Virginia Dept. of Health v. West Virginia Civil Serv. Comm'n,* 178 W.Va. 237, 358 S.E.2d 798 (1987) (finding no good cause for dismissal); *Blake v. Civil Serv. Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983) (same); *City of Logan v. Dingess,* 161 W.Va. 377, 242 S.E.2d 473 (1978) (same); *Guine v. Civil Serv. Comm'n,* 149 W.Va. 461, 141 S.E.2d 364 (1965) (same).

In *Fox v. Board of Education of Doddridge County,* 160 W.Va. 668, 236 S.E.2d 243 (1977), a case not involving constitutional due process, we were required to determine whether a teacher's unexcused absence from a parent-teacher conference constituted wilful neglect of duty warranting his dismissal. The teacher had been employed with the Doddridge County Board of Education for 23 years. This Court found that the dismissal was not supportable and so reversed. In doing so, we made the following observations:

We believe [dismissal was not warranted] for the simple reason that the punishment does not fit the misdeed. Unexcused absence from those occasions at which attendance is expected may be valid grounds

employee with six years of tenure should be notified of any nonretention decision by timely notice. The employee was not treated in accordance with the policies. This Court concluded that, because of her long tenure, the employee was entitled to the safeguards which the policies established. In reaching our decision, we noted that in *Beverly Grill, Inc. v. Crow,* 133 W.Va. 214, 57 S.E.2d 244 (1949), and *Hoffman v. Town of Clendenin,* 93 W.Va. 618, 115 S.E. 583 (1923), there was a recognition that arbitrary and capricious behavior on the part of a public employer is synonymous with a lack of procedural due process. The ruling in *McLendon* stands for the proposition that where an employee has obtained a property interest in employment with a public employer, he or she is entitled to nonarbitrary and noncapricious treatment by that employer. *See Fraley v. Civil Serv. Comm'n,* 177 W.Va. 729, 733, 356 S.E.2d 483, 487 (1987) ("The due process safeguards which protect against arbitrary deprivation of the 'property interest' in continued uninterrupted employment cannot be disregarded by the Legislature."); Syl. pt. 12, *Queen v. West Virginia Univ. Hosps., Inc.,* 179 W.Va. 95, 365 S.E.2d 375 (1987) ("A person employed by a state actor cannot be summarily discharged without any procedural protections, because the fun-

damental promise of due process is freedom from arbitrary treatment; the procedures must be sufficient to insure that the action is fair and based on reasonable standards.").

13. We have consistently recognized that the purpose of the civil service system is to provide civil service employees security of tenure. *See Blake v. Civil Serv. Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983); *Mackin v. Civil Serv. Comm'n,* 155 W.Va. 139, 181 S.E.2d 684 (1971).

14. "Seriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute. The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public." Syl. pt. 5, *Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879 (1990).

15. "Likewise, the petty theft by state hospital employees of clothing donated for patients is worthy of discipline, but does not constitute good cause for dismissal of long-term civil service tenured employees with unblemished work records." *Blake v. Civil Serv. Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983).

for disciplinary action such as a temporary suspension from teaching responsibilities. But it does not follow that the same recalcitrant conduct calls for permanent banishment of the errant teacher from the school system. Suspension, responsibly exercised, may be a reasonable means of maintaining order and authority over school board employees. Dismissal undoubtedly has therapeutic disciplinary qualities, but we believe that dismissal predicated upon an isolated incident of unexcused absence from a parent-teacher conference is so unduly severe as to be arbitrary and unreasonable.

*Fox,* 160 W.Va. at 671–72, 236 S.E.2d at 246. *See also Beverlin v. Board of Ed. of Lewis County,* 158 W.Va. 1067, 216 S.E.2d 554 (1975) (determining that dismissal of teacher for unexcused absence during part of first school day to register for evening class at university was unreasonable, arbitrary and capricious).

Other courts have also found that dismissal for insubordination may be arbitrary in light of an employee's otherwise excellent employment record. For example, in *Tucker v. Board of Education of the Town of Norfolk,* 177 Conn. 572, 418 A.2d 933 (1979), a tenured teacher was fired for insubordination when she took a two-day leave of absence after her superiors had denied permission for such leave. The court in *Tucker* found that dismissal was too harsh and held:

> We are of the opinion that, although there are circumstances indicating that the plaintiff was "insubordinate" in her conduct, a review of the entire record discloses that the drastic disciplinary action of dismissal constituted exceedingly excessive punishment for the plaintiff's misconduct, and an abuse of discretion, especially in the light of the plaintiff's excellent and unblemished school record as a capable, dedicated teacher.

*Tucker,* 418 A.2d at 938. *See also Board of Educ. of Round Lake Area Schs., Community Unit Sch. Dist. No. 116 v. State Bd. of Educ.,* 292 Ill.App.3d 101, 226 Ill.Dec. 309, 685 N.E.2d 412 (1997) (concluding that dismissal for insubordination was too harsh); *Rust v. Clark County Sch. Dist.,* 100 Nev. 372, 683 P.2d 23 (1984) (same); *Harris v. Mechanicville Cent. Sch. Dist., Mechanicville, Saratoga County,* 86 Misc.2d 144, 382 N.Y.S.2d 251 (1976) (same); *Hall v. The Board of Trustees of Sumter County Sch. Dist. No. 2,* 330 S.C. 402, 499 S.E.2d 216 (1998) (same); *See also State ex rel. Richardson v. Board of Regents of Univ. of Nev.,* 70 Nev. 347, 269 P.2d 265 (1954) (reversing dismissal for insubordination).

▮ The prior employment termination decisions of this Court and decisions in other jurisdictions, lead us to our conclusion and result and holding that constitutional due process is denied when a tenured public higher education teacher, who has a previously unblemished record, is immediately terminated for an incident of insubordination *that is minor in its consequences.* Under such circumstances, due process requires the educational institution to impose progressive disciplinary sanctions in an attempt to correct the teacher's insubordinate conduct before it may resort to termination. W. Va. Const. art. III, § 10.

Prior to Mr. Trimble's problems surrounding the IPSI program, he faithfully served the College without incident for 19 years. The circuit court specifically found that Mr. Trimble's "teaching ability, his quality as a teacher is not being called into question.... The parties stipulated that [Mr. Trimble's] work with students was not 'anything less than excellent.'" While we do not condone Mr. Trimble's failure to attend several IPSI meetings and his refusal to prepare an IPSI syllabus, we find that, in view of his 19 years of outstanding service and unblemished record, the College acted arbitrarily and capriciously in terminating him. *See DeVito v. Board of Educ.,* 173 W.Va. 396, 317 S.E.2d 159 (1984) (finding dismissal of teacher was arbitrary and capricious); Syl. pt. 3, in part, *Beverlin v. Board of Ed. of Lewis County,* 158 W.Va. 1067, 216 S.E.2d 554 ("The authority ... to dismiss a teacher ... must be exercised reasonably, not arbitrarily or capriciously.").

▮ Because of Mr. Trimble's property interest in continued employment with the College and his previously unblemished record, due process required the College to

utilize progressive disciplinary measures against Mr. Trimble. This conclusion is in keeping with a long held principle by this Court that "'[a] teacher may not be lightly shorn of the privileges for which he [or she] fairly contracted.'" *Fox v. Board of Ed. of Doddridge County,* 160 W.Va. at 672, 236 S.E.2d at 246, (quoting *White v. Board of Educ. of Lincoln County,* 117 W.Va. 114, 125, 184 S.E. 264, 268 (1936)). In other words, "[t]he state may not convey a property interest, such as tenure, and then arbitrarily terminate employment in violation of that interest." *Wuest v. Winner Sch. Dist. 59–2,* 607 N.W.2d 912, 918 (S.D.2000). We therefore order that Mr. Trimble be reinstated with backpay and benefits from the effective date of his improper termination.[16]

## IV.

### CONCLUSION

In view of the foregoing, the circuit court's order is reversed. Mr. Trimble shall be reinstated to his position as a tenured assistant professor, with backpay and benefits from the effective date of his improper termination.

**Reversed.**

MAYNARD, Justice, dissenting.

(Filed July 6, 2001)

I dissent from the majority opinion because I do not believe that the College acted arbitrarily and capriciously in terminating the appellant.

This Court, as an appellate court, has a quite limited and modest role which is simply to ensure that the law is properly interpreted and applied below. With its decision in this case, however, the majority expresses its intent to act as a kind of "super board of directors" whose role is to micro-manage higher education employment and disciplinary decisions. Worse still, the majority formalizes its role of micro-manager by fashioning from whole cloth an overly broad constitutional rule in Syllabus Point 6 which has no foundation in constitutional jurisprudence but rather stems from the majority's own subjective notions of justice.

In addition, the majority sends an unmistakable message to State college and university administrations that even the most recalcitrant, inflexible, and uncooperative tenured teachers cannot be fired absent a protracted, and most likely futile, effort to bring them into line. The undisputed facts indicate that the appellant missed at least four instructional meetings, adamantly refused to complete a syllabus in the required format, and, when advised of the College's intention to terminate his employment for insubordination, declined an opportunity to meet with administrators to rebut the charges and discuss the matter. It was only *after* his termination that he filed the grievance that has ended up in this Court. Despite these facts, the majority finds that the appellant's termination was improper.

The majority opinion unreasonably burdens college administrators with the extra expense, in both time and money, of additional hearings and delays prior to the termination of ineffective or insubordinate employees. It thus robs administrators of the ability to take quick and decisive action. One casualty of this unnecessary extra expense may be the ability to dispense a quality education at a reasonable cost.

Finally, the real outrage in this case is the sad fact that this Court has rewarded the appellant's egregious misconduct with many thousands of tax dollars in back pay and interest.

Accordingly, for the reasons stated above, I dissent.

---

16. In requiring the College to reinstate Mr. Trimble, we are not relieving him of any requirement by the College that he comply with its policies involving meeting attendance and participation in the IPSI program.